UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE CARLINO, an individual on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHG MEDICAL STAFFING, INC.,<br><br>Defendant. | No. 1:17-cv-01323-DAD-JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR RULE 23 CLASS CERTIFICATION AND CONDITIONAL CERTIFICATION OF A FLSA COLLECTIVE<br><br>(Doc. No. 19) |

This matter is before the court on plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23 and conditional collective certification pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). (Doc. No. 19.) A hearing on the motion was held on January 8, 2019. Attorney Matthew Hayes appeared telephonically on behalf of plaintiff, and attorneys Sarah Kroll-Rosenbaum and Sayaka Karitani appeared telephonically on behalf of defendant. Having considered the parties' briefs and oral arguments, and for the reasons set forth below, the court will grant plaintiff's motion.

**BACKGROUND**

Defendant CHG Medical Staffing, Inc. ("CHG") is a healthcare staffing company that employs hourly healthcare professionals ("travelers") for short term travel assignments at

/////

1

healthcare facilities throughout California and elsewhere.[1] (Doc. No. 1 at ¶ 10.) In addition to providing an hourly wage, CHG provides travelers with a stipend for meals, incidentals, and housing provided by CHG (collectively, the "per diem"). (Doc. Nos. 1 at ¶ 12; 19-3 at 9.) The per diem is paid weekly and is included with the hourly wages in either an electronic deposit or a paycheck. (Doc. No. 19-3 at 9.)

Although CHG labels the per diem benefits as "expenses," plaintiff contends that CHG "is not concerned with the amount of expenses actually incurred by the traveler," as travelers are "not required to verify any expenses . . . and there is no restriction on how travelers may spend the stipends and allowances." (*Id.* at 12.) Instead, CHG's policy is to determine each traveler's weekly per diem based on what each traveler reports on her timesheet. (*Id.* at 10.) To earn the full weekly per diem, which amounts to seven days' worth of meals, incidentals, and housing benefits, a traveler must satisfy her weekly hours requirements, which generally consists of three twelve-hour shifts, or thirty-six hours a week. (*Id.*) If a traveler fails to satisfy her weekly hours requirement, the per diem is reduced in proportion to the shortfall. (*Id.*) Thus, "whether or not a traveler earns seven days' worth of Per Diem Benefits each week hinges exclusively on whether the traveler satisfied the weekly hours worked requirement." (*Id.* at 12.)

Plaintiff and the putative class and collective members are or were employed as travelers by CHG. (Doc. No. 1 at ¶¶ 19–20.) Plaintiff contends that, notwithstanding that the amount of weekly per diem benefits are contingent on the number of hours worked by a traveler, CHG does not include the value of the per diem in determining that traveler's regular rate when calculating overtime wages. (*Id.* at ¶ 16.) Based on these allegations, plaintiff asserts the following claims: (1) class and collective action claims for failure to pay overtime in violation of California Labor Code §§ 510 and 1194; (2) class action claims for unfair business practices in violation of California Business and Professions Code § 17200 *et seq.*; and (3) class action claims for waiting

---

[1] RNnetwork, a division of CHG, is responsible for staffing travelers on assignments. (Doc. No. 19-3 at 9.) Plaintiff's complaint notes that RNnetwork is a division of CHG (Doc. No. 1 at ¶ 5), but alleges her claims only against CHG. The pending motion, however, makes reference to both RNnetwork and CHG. Because CHG is the defendant named in this case and because the distinction between the two entities appears immaterial for purposes of resolving this motion, the court will refer to both entities as CHG.

2

time penalties in violation of California Labor Code §§ 201–203. (*Id.* at 8–13.)

Plaintiff seeks to certify and represent the following class:

> All non-exempt hourly healthcare professionals employed in California through the RN Network division of CHG Medical Staffing, Inc., who, at any time from September 29, 2013 through the date of certification, worked overtime and had the value of their meals and incidental stipends, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay.

(Doc. No. 19-3 at 13.) Additionally, plaintiff seeks to conditionally certify the following FLSA collective:

> All non-exempt hourly healthcare professionals employed in the United States through the RN Network division of CHG Medical Staffing, Inc. who, at any time within the three years preceding certification, worked in excess of 40 hours in one or more workweeks and had the value of their meals and incidentals stipend, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay.

(*Id.* at 23.)

CHG does not contest either the class or conditional collective certifications, instead limiting its opposition to address the purported inadequacies with plaintiff's proposed notice for each certification request. (Doc. No. 21 at 2.)

## CLASS CERTIFICATION

**A.     Standard for Class Certification under Federal Rule of Civil Procedure 23**

The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties—unwieldy in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)); *see also Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Federal Rule of Civil Procedure 23 controls class certification and imposes a two-step process in deciding whether a class may be certified.

First, Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites in order for the court to consider whether certification is proper: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. If and only if a putative class satisfies these four

3

requirements may it then proceed to show it also satisfies one of the three subsections of Rule 23(b). The party seeking class certification bears the burden of establishing conformity with these requirements, and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted. *Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 350. A court must review the merits of a party's substantive claim to the extent that they overlap with issues touching on class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 564 U.S. at 350–51 and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)); *see also Blair v. The CBE Grp.*, 309 F.R.D. 621, 625 (S.D. Cal. 2015). Only after it has conducted a "rigorous analysis" of these facts and determined they show "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a district court certify a class. *Ellis*, 657 F.3d at 981 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 161, (1982)); *see also Comcast*, 569 U.S. at 33–34 (extending the "rigorous analysis" requirement to Rule 23(b)); *Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b)."). If a court does decide to certify a class, it must define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g).

        1.    <u>Numerosity</u>

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict number requirement for numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite. *See Ikonen v. Hartz Mt. Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."); *see also Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) ("Generally, 40 or more members will satisfy the numerosity requirement.") (quoting *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008)); *McMillon v. Hawaii*, 261 F.R.D. 536, 542 (D. Haw. 2009).

/////

/////

4

### 2. Commonality

Rule 23 requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. As the Supreme Court further explained, this frequently necessitates an inquiry that "overlap[s] with the merits of plaintiff's underlying claim." *Id.* at 351.

### 3. Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (noting that this standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical"). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

### 4. Adequacy of Representation

Plaintiffs seeking class certification must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"

*Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020)); s*ee also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). "An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 959 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1020). Accordingly, "[c]lass certification will be inappropriate if fundamental conflicts of interest are determined to exist among the proposed class members." *Allied Orthopedic v. Tyco Healthcare Grp.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007). Generally, the adequacy inquiry seeks to ensure that the class representative is "part of the class and [that she] possess[es] the same interest and injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

### 5. Predominance and Superiority

Once the prerequisites of Rule 23(a) are met, the court must certify the class under one of the Rule 23(b) categories. Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is [deemed to be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods, Inc. v. Bouaphakeo*, ___U.S. ___, ____, 136 S. Ct. 1036, 1045 (2016) ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'") (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority requirement demands courts "assess the relative advantages of alternative procedures for handling the total controversy" in order to determine that "a class action is the 'superior' method of resolution." Fed. R. Civ. P. 23(b)(3) advisory comm. note; *see also Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-0525-KJM-CKD, 2016 WL 696582, at *8 (E.D. Cal. Feb. 22, 2016). While the predominance requirement is similar to the Rule 23(a)(2)

commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. Ultimately, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting Newberg, § 4:49, at 195–96).

Rule 23 provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four metrics pertinent to superiority, including class members' interests in individually controlling litigation, whether any litigation has already been filed by putative class members, the desirability of concentrating the litigation in a class action, and the "likely difficulties in managing a class action." *Id.* The Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should merely look to "manageability as one component of the superiority inquiry." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)).

**B.  Discussion**

Here, defendant does not contest class certification. (Doc. No. 21 at 2.) Nonetheless, the court has an independent duty to ensure that class certification is appropriate in a given case. *See In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010). The court will therefore briefly examine each of the prerequisites for class certification.

1. Numerosity

According to the pending motion, the proposed class "contains well in excess of 500 individuals." (Doc. No. 19-3 at 14.) This is sufficient to satisfy Rule 23's numerosity requirement. *See, e.g.*, *Orvis v. Spokane County*, 281 F.R.D. 469, 473 (E.D. Wash. 2012) (finding numerosity satisfied with roughly 260 class members); *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

/////

2.      Commonality

Plaintiff contends that the overtime claim and the derivative state law claims hinge on common questions of fact and law. (Doc. No. 19-3 at 15–20.) The crux of plaintiff's argument is that "CHG systematically underpaid overtime to class members pursuant to its policy of excluding the value of Per Diem Benefits from the 'regular rate' when calculating overtime." (*Id.* at 15.) Given that the proposed class in this case is composed of travelers who worked overtime and had the value of their per diems excluded from their regular rate, there exists a common factual question about whether CHG intentionally adopted a policy to exclude the value of the per diem benefits from the regular rates when calculating overtime. Moreover, there exists a common question of law as well: Does CHG's policy of tying a traveler's weekly per diem to the number of hours she worked in a week necessitate including the value of the per diem in her regular rate when calculating overtime? The court concludes that commonality is therefore satisfied here because the unpaid overtime claims and the derivative state law claims of all the proposed class members will stand or fall on whether the value of the per diem is a part of the regular rate when calculating overtime. *See Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)); *see also Taylor v. FedEx Freight, Inc.*, No. 13-CV-1137-LJO-BAM, 2015 WL 2358248, at *7 (E.D. Cal. May 15, 2015), *report and recommendation adopted,* 2015 WL 4557412 (E.D. Cal. July 27, 2015) ("The Court finds that the commonality requirement is satisfied here because Plaintiff challenges uniform policies and systemic practices that apply uniformly to this class of employees. Whether the Defendant's policies and practices comply with California's specific requirements is the type of question that can be answered on a class[-]wide basis.").

3.      Typicality

Named plaintiff Carlino has submitted a declaration to demonstrate that her own claims are typical of the class she seeks to represent. (Doc. No. 19-6 ("Carlino Decl.").) In that

declaration, plaintiff Carlino avers that: (1) she worked several assignments for CHG, both in California and other states (*id.* at ¶ 2); (2) she received a per diem consisting of a weekly meals and incidentals stipend and a weekly housing allowance or company-provided housing as part of her pay for these assignments (*id.* at ¶ 5); (3) the per diem was subject to proration if she did not work the minimum required weekly hours for each assignment (*id.*); (4) when she worked overtime, CHG did not include the value of her per diem in her regular rate when calculating overtime pay (*id.* at ¶ 6); and (5) that, because of this exclusion, she was not paid all of the wages she was and is still owed (*id.* at ¶ 7). Because the proposed class consists of travelers, like Carlino, who were employed in California, worked overtime, and had the valued of their per diems excluded from their regular rate for purposes of calculating overtime pay, the court finds that plaintiff Carlino's claims are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Typicality is therefore satisfied here.

4. Adequacy of Representation

Class counsel and plaintiff Carlino have submitted declarations stating that neither counsel nor plaintiff Carlino have any actual conflicts of interest. (Carlino Decl. at ¶ 11; Doc. No. 19-5 ("Hayes Decl.") at ¶ 16.) Plaintiff's counsel's declaration establishes that both of the attorneys working on this matter has significant experience in similar litigation. (Hayes Decl. at ¶¶ 12–15.) Plaintiff Carlino's declaration establishes that she, as the named class representative, can adequately represent the wider class. (Carlino Decl. at ¶¶ 8–11.) Adequacy of representation is therefore also satisfied here.

5. Predominance and Superiority

Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is [deemed to be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods*, 136 S. Ct. at 1045 ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie

9

showing [or] the issue is susceptible to generalized, class-wide proof.'") (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)).

Plaintiff contends that the claims of each class member will prevail or fail in unison because the questions that are common are dispositive. (Doc. No. 19-3 at 22.) Specifically, plaintiff argues that liability for each claim in this case hinges entirely on the common questions of whether CHG intentionally adopted the policy of excluding per diem value from the overtime calculation despite tying the per diem to hours worked, and whether this policy violates California law. (*Id.*) Thus, plaintiff contends that a class action is superior to separate individual actions because it will reduce litigation costs and promote efficiency. (*Id.*) It therefore appears that "[a] common nucleus of facts and potential legal remedies dominates this litigation," and the court finds that the common questions present a significant aspect of the case and that these questions can be resolved for all members in a single litigation. *Hanlon*, 150 F.3d at 1022. The court also finds that class resolution is superior to other available methods for adjudication of the controversy as each member's individual pursuit of the same claims would burden the judiciary. For these reasons, the court therefore concludes that the predominance and superiority requirements are satisfied in this case.

**C.      Conclusion**

Having found that each of the requirements for class certification pursuant to Rule 23 are satisfied here, the court will grant plaintiff's motion for class certification.

**CONDITIONAL COLLECTIVE CERTIFICATION**

**A.      Standard for Conditional Collective Certification under FLSA**

Pursuant to FLSA, an employee may file a civil action, on behalf of himself and other employees similarly situated, against an employer that fails to adhere to federal minimum wage and overtime law. 29 U.S.C. § 216(b); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Unlike a class action brought under Federal Rule of Civil Procedure 23, similarly situated employees can join a FLSA collective action only if they opt-in by giving written consent to be joined. 29 U.S.C. § 216(b).

/////

10

FLSA does not define the term "similarly situated," and this court has identified no binding Ninth Circuit or Supreme Court authority interpreting that term. However, district courts in this circuit have used a two-step approach to decide whether potential FLSA plaintiffs are similarly situated. *See, e.g., Kellgren v. Petco Animal Supplies, Inc.*, No. 13CV644 L KSC, 2015 WL 5167144, at *2 (S.D. Cal. Sept. 3, 2015); *Syed v. M–I, L.L.C.*, No. 1:12–cv–01718–AWI–MJS, 2014 WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014); *Troy v. Kehe Food Distrib., Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011); *Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467–68 (N.D. Cal. 2004); *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002). In the first step, district courts may conditionally certify the proposed class based on consideration of the parties' pleadings and affidavits. *Leuthold*, 224 F.R.D. at 467. This determination is made under a "lenient standard"—requiring a preliminary determination that notice is appropriate and that "the putative class members were together the victims of a single decision, policy, or plan." *Lewis*, 669 F. Supp. 2d at 1127 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). "The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Genesis Healthcare*, 569 U.S. at 75 (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 171–72 (1989)). District courts have the authority to facilitate notice to potential plaintiffs and may set a deadline for plaintiffs to opt in. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (citing *Hoffmann–La Roche*, 493 U.S. at 169). In the second step, after class members have opted in and discovery has taken place, the party opposing class certification may seek to decertify the class. *Leuthold*, 224 F.R.D. at 467. This court need only consider the first step at this stage of the litigation.

**B.     Discussion**

Here, plaintiff has met her burden of showing at the first step that conditional certification is warranted. The complaint alleges that this suit is brought on behalf of plaintiff and all other travelers who were employed by CHG and who were deprived of their full overtime compensation because CHG did not include the value of their per diem benefits in the regular rate of pay used to calculate overtime. (*See* Doc. No. 1.) Plaintiff contends that the decision to not

11

include the value of the per diem benefits in the regular rate of pay is part of a broader uniform policy affecting other employees. (*Id.* at ¶¶ 10–18.) Therefore, any claims of the putative collective members concerning this issue are the result of a single policy. Moreover, and as discussed more fully below, the proposed notice apprises putative collective members of the claims alleged, the steps they must take to be included in this action, and the consequences of doing so. (Doc. No. 19-2.) Based on the foregoing, the court will grant plaintiff's conditional certification of the proposed collective.

## ADEQUACY OF THE PROPOSED NOTICES

In its opposition, CHG contends that plaintiff's proposed notices are not adequate. Specifically, CHG argues that: (1) plaintiff's proposed notices omit critical information about potential negative tax implications that could arise should the class and/or collective prevail in the litigation; and (2) plaintiff's combined Rule 23 and FLSA notice might confuse a potential recipient because the notice asks the recipient to both opt-out of a class and opt-in to a collective in the same notice. (Doc. No. 21 at 2.)

**A.      Legal Standards for Rule 23 Class and FLSA Conditional Collective Notices.**

"For any class certified under Rule 23(b)(3)[,] . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members." Fed. R. Civ. P. 23(c)(2)(B). The notice must state "in plain, easily understood language:"

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any members who request exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members.

*Id.* "In an FLSA action, the court must provide potential plaintiffs accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate." *Thompson v. Costco Wholesale Corp.*, No. 14-CV-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (citing *Adams v. Inter-Con Sec. Sys.*,

/////

242 F.R.D. 530, 539 (N.D. Cal. 2007) and *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)) (internal quotation marks omitted).

**B.     Whether Plaintiff's Proposed Notices Adequately Inform the Class and Conditional Collective of Potential Adverse Tax Implications.**

In sections titled "***WHAT IS THIS LAWSUIT ABOUT?***," plaintiff's proposed notices state in relevant part:

> CHG [] contends that the Lawsuit would have harmful tax consequences on employees if the Court holds that the per diem benefits must be included in the calculation of overtime pay. Plaintiff disagrees with CHG's assertion that prevailing on the overtime claims would cause adverse tax consequences. The Court has not made any rulings on the merits of any claims or defenses asserted in the Lawsuit.

(Doc. Nos. 19-1 at 3; 19-2 at 3.) CHG argues that this language does not adequately explain the potential adverse tax consequences putative members might face should plaintiff prevail in the litigation. (Doc. No. 21 at 6.)

According to CHG, because the per diem benefits provided to the putative class and collective members "were made pursuant to an accountable plan and thus were not subject to taxation," there exists "the potential for class members to *owe* money to the IRS should Plaintiff prevail (and in nearly every instance owe more money in taxes than they would be awarded in unpaid overtime)." (*Id.* at 6, 8.) Essentially, CHG's argument is that a ruling in favor of plaintiff—which would necessarily find that the value of the per diem benefits should have been included in the regular rate when calculating overtime pay—means that the per diem benefits themselves will be considered wages for taxation purposes and that plaintiffs will therefore owe more in retroactive taxes on the per diem benefits than they stand to gain from this litigation. (*Id.* at 6.) CHG contends that this "constitutes material information that the class/collective must be permitted to consider when making an informed decision as to whether to participate." (*Id.* at 8.) CHG therefore proposes that the notices contain a separate section, titled "***WILL I OWE TAXES IF PLAINTIFF PREVAILS?***" Defendant's proposed answer to that question is:

> Maybe. If there is a decision that per diems in question are "wages" instead of "reimbursements," as Plaintiff asserts in this Lawsuit, there is a possibility that the Internal Revenue Service ("IRS") may

> no longer permit CHG Medical Staffing to treat the per diems as a tax-free benefit. This is because the per diem stipends may no longer meet "accountable plan" rules under the Internal Revenue Code (*See* 26 C.F.R. § 1.362-2, 26 U.S.C. § 162). In this situation, all future per diem stipends provided by CHG Medical Staffing may become taxable wages, subject to withholding and employment taxes. Under these circumstances, the IRS might also take the position that the position that all class members are personally liable for all federal and income taxes that were not withheld on any past per diem amounts received. As a result, ***you may owe the IRS retroactive taxes on any per diem amounts you have previously received from CHG Medical Staffing if you choose to participate in the Lawsuit***.

(Doc. No. 21-1 at 7–8, 13–14.)

The court (1) is not persuaded by CHG's argument that plaintiff's proposed notices do not adequately inform putative members of potential negative tax implications and (2) finds that CHG's proposed notices might well unfairly dissuade putative members from joining either the class or collective. First, plaintiff's proposed notices *do* include information about potential adverse tax implications. As noted above, the notices lay out defendant's position on the potential for retroactive taxation, note that plaintiff disagrees with that position, and further note that the court has not issued any rulings on any claim or defense in the litigation. (*See* Doc. Nos. 19-1 at 3; 19-2 at 3.)

Second, plaintiff's proposed notices are adequate with respect to the potential for retroactive taxation because CHG's interpretation of the law is subject to debate. (Doc. No. 21 at 6.) A finding that the value of per diem benefits should be included in the regular rate when calculating overtime pay does not necessarily mean that those same per diem benefits transform into wages subject to retroactive taxation. *See, e.g.*, *Clarke v. AMN Servs., LLC*, No. cv-16-4132-DSF (KSx), 2017 WL 6942755, at *2 (C.D. Cal. Oct. 12, 2017) ("[C]ourts have recognized the tests for whether per diems should be included in an employee's regular rate [] and whether per diems should be taxable are not coextensive."). Indeed, recently the Eighth Circuit noted that:

> The IRS regulations governing accountable plans are not identical to the [Department of Labor] regulations governing the calculation of employees' regular rates for minimum wage purposes. There are legal differences and, in the case of a regular rate calculation, many additional factors at play. The two findings are not coextensive and thus a finding in one does not negate or direct a finding in the other.

14

*Baouch v. Werner Enterprises, Inc.*, 908 F.3d 1107, 1113 (8th Cir. 2018). CHG has not pointed the court to any authority in support of the notion that putative members *will* retroactively owe taxes should plaintiff prevail in this action. Indeed, CHG admits—as evidenced by its own proposed notices—that putative members "*may* owe the IRS retroactive taxes" if plaintiff succeeds, not that they *will* owe the IRS retroactive taxes. (Doc. No. 21-1 at 8, 14 (emphasis added).) The court is therefore not convinced that CHG's interpretation of the potential tax implications of this lawsuit is correct.[2]

Third, given that CHG's interpretation of the law on this issue is subject to debate, inclusion of CHG's longer and separately-sectioned proposed language "might . . . dissuade those with meritorious claims from joining the action." *Lewis v. ASAP Land Exp., Inc.*, No. CIV.A.07-2226-KHV, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008). CHG "cites no authority for the proposition that at such an early stage in the litigation, the Court should warn putative class [or collective] members of potential tax consequences from any recovery." *Id.* In its opposition to the pending motion, CHG has attached as an exhibit an order issued in *Dittman v. Medical Solutions*, 2:17-cv-01851-MCE-CKD, (E.D. Cal.). (*See* Doc. No. 21-1 at 96.) There, the plaintiff was ordered to include in its class certification and conditional collective certification notices language similar to the language CHG proposes here. However, the court in *Dittman* did not explain why in that case the notice language in question was appropriate. (*See id.* at 98–99.) In any event, it has been recognized that

> [a]s with all disputes concerning the language contained in [] notices, the Court must strike a balance between the potential *in terrorem* effect of the language and the desire to provide putative plaintiffs with sufficient information to allow them to make an informed decision on whether they wish to participate in the subject litigation.

*Lackie v. U.S. Well Servs., LLC*, No. 2:15-CV-3078, 2017 WL 395735, at *2 (S.D. Ohio Jan. 30,

---

[2] The issue of whether the putative class and collective members will owe retroactive taxes on previously provided per diems should plaintiff prevail here is not being litigated in this action and the court will therefore not need to resolve the issue. The court is satisfied that, because the law on this issue is unclear and because the language defendant proposes might dissuade putative members from remaining in the class or opting in to the collective, plaintiff's proposed notices adequately address the potential for retroactive taxation.

15

2017). Here, the court finds that the language suggested by plaintiff's proposed notices strikes the appropriate balance between ensuring that putative class and collective members have sufficient information to allow them to make an informed decision about whether to opt-out of the class or opt-in to the collective on the one hand, and ensuring that the putative members are not dissuaded from either opting out of the class or opting in to the collective on the other. However, because a potential for adverse tax consequences appears to exist, and pursuant to the parties' agreement expressed at the January 8, 2019 hearing on the pending motion, the court will instruct the parties to revise plaintiff's proposed notices to include language informing putative members that they may wish to consult a tax professional regarding any potential tax implications of the lawsuit.

**C. Whether Plaintiff's Proposed Combined Rule 23 and FLSA Notice Should be Separated into Two Notices.**

Finally, CHG contends that, "for the sake of clarity and simplicity," the court should require that the plaintiff's proposed combined Rule 23 and FLSA notice to California employees be separated into two separate notices. (Doc. No. 21 at 9–10.) Plaintiff's counsel counters that "in such hybrid Rule 23/FLSA actions, . . . a single notice is less likely to confuse employees than two separate notices, which all too often results in employees who wish to participate mistakenly returning both opt-out and opt-in forms." (Doc. No. 22 at 2.)

"[C]ourts considering approval of settlements in these hybrid actions consistently require class notice forms to explain: '(1) the hybrid nature of th[e] action; [] (2) the claims involved in th[e] action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.'" *Thompson*, 2017 WL 697895, at *8 (quoting *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013)). The court has reviewed plaintiff's proposed combined class action and conditional collective action notice (*see* Doc. No. 19-1) and finds that the notice meets these requirements. However, out of an abundance of caution, the court will

16

instruct the parties to revise the combined notice to make clear at the outset that the recipient of the combined notice has two decisions to potentially make: (1) if she falls within the definition of the class as the class is defined in the notice, she has to decide whether she wants to opt out of the class; and (2) if she falls within the definition of the collective as the collective is defined in the notice, she has to decide whether she wants to opt in to the collective. While the combined notice, as proposed by plaintiff, does have similar instructions later in the notice, the court instructs the parties to add clarifying instructions in this regard to the beginning of the notice and to also keep the instructions addressing these two decisions that appear later in plaintiff's proposed notice.

## CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for class certification (Doc. No. 19) is granted;
2. The following class is certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3): **All non-exempt hourly healthcare professionals employed in California through the RN Network division of CHG Medical Staffing, Inc., who, at any time from September 29, 2013 through the date of certification, worked overtime and had the value of their meals and incidental stipends, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay.**
3. The court finds that the attorneys at Hayes Pawlenko LLP, Matthew B. Hayes and Kye D. Pawlenko, are qualified and adequate counsel, and hereby appoints Hayes Pawlenko LLP as class counsel for the aforementioned class;
4. The court finds that plaintiff Jacqueline Carlino will fairly and adequately protect the interests of the class, and hereby appoints Jacqueline Carlino as the class representative;
5. Plaintiff's motion for conditional certification of this collective action under FLSA (Doc. No. 19) is granted;

/////

6. The following collective is conditionally certified pursuant to FLSA: **All non-exempt hourly healthcare professionals employed in the United States through the RN Network division of CHG Medical Staffing, Inc. who, at any time within the three years preceding certification, worked in excess of 40 hours in one or more workweeks and had the value of their meals and incidentals stipend, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay**;

7. Plaintiff Jacqueline Carlino will represent the collective members and Hayes Pawlenko LLP will serve as counsel for the collective; and

8. The parties are ordered to meet and confer to revise plaintiff's proposed notices of class certification and conditional collective certification in a manner consistent with this order. The parties are directed to include language in the notices informing putative members of their right to consult a tax professional about potential adverse tax consequences should plaintiff prevail. The parties are further directed to include an instruction at the beginning of the combined notice indicating that the putative member has two potential decisions to make with regard to that notice. The parties are ordered to submit the revised joint proposed notices to the court within fourteen (14) days of this order.

IT IS SO ORDERED.

Dated: **February 28, 2019**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE