UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE CARLINO, an individual on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHG MEDICAL STAFFING, INC.,<br><br>Defendant. | No. 1:17-cv-01323-DAD-JLT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART<br><br>(Doc. Nos. 31, 33) |

This matter is before the court on the parties' cross-motions for summary judgment. (Doc. Nos. 31, 33.) A hearing on the motions was held on September 17, 2019. Attorneys Matthew Hayes and Kye Pawlenko appeared on behalf of plaintiff, and attorneys Sarah Kroll-Rosenbaum and Sayaka Karitani appeared on behalf of defendant. Having considered the parties' briefs and oral arguments, and for the reasons set forth below, the court will deny defendant's motion for summary judgment and grant plaintiff's partial motion for summary judgment in part.

## BACKGROUND

No genuine dispute as to any material fact is presented by the pending motions. Defendant CHG Medical Staffing, Inc. ("CHG") staffs nurses and technicians on short-term travel assignments, primarily at hospitals across the United States. (Doc. No. 32, Joint Stipulation

re Undisputed Facts ("UF"), at 2.)  Between October 2015 and August 2016, CHG staffed plaintiff Jacqueline Carlino on three thirteen-week travel assignments to Madison and Jamesville, Wisconsin and Bakersfield, California.  (*Id.* at 4.)  While on each of these assignments, plaintiff's permanent residence was in Pittsburgh, Pennsylvania.  (*Id.*)

The typical travel assignment lasts thirteen weeks and required employees to be away from their homes for the duration of the assignment.  (*Id.* at 2.)  Employees staffed to work travel assignments (or "travelers," as the parties refer to them) incurred meal, incidental, and lodging expenses while away from their permanent residences at their assignment locations.  (*Id.*)  In addition to their weekly wages, travelers were provided weekly per diem payments, covering seven days' worth of meals, incidentals, and housing, either in the form of a housing allowance or company-provided housing (collectively, "the per diem").  (*Id.*)  CHG used the federal government's Continental United States ("CONUS") per diem rates set by the General Services Administration ("GSA") and the Internal Revenue Service ("IRS") to determine the per diem.  (*Id.*)  The per diems were included in travelers' weekly electronic deposits or paychecks and appeared as two separate line items on their weekly paystubs.  (*Id.*)  Travelers were not required to provide verification of actual expenses in order to receive per diems, and CHG did not restrict how travelers spent their per diems.  (*Id.*)

The average weekly per diem paid to members of the Rule 23 certified class[1] during the class period was $986.55.  (*Id.* at 4.)  CHG required travelers to work a specified minimum number of hours each week, generally thirty-six hours consisting of three twelve-hour shifts.  (*Id.* at 3.)  Thus, when the average weekly per diem for the class is divided by the thirty-six hours a traveler works each week, the per diem results in an hourly rate of approximately $27.40.  (Doc. No. 35-2 at 13.)  The average base hourly wage paid to the class was approximately $23.17.  (*Id.* at 12.)  Thus, when the hourly per diem rate is combined with the base hourly wage, it results in a combined pay rate of approximately $50.57 per hour.

/////

---

[1] On February 28, 2019, the court granted plaintiff's motion for Rule 23 class certification and conditional certification of a Fair Labor Standards Act ("FLSA") collective.  (*See* Doc. No. 25.)

Whether a traveler is entitled to the full weekly per diem each week is conditioned on whether she has worked the contracted number of minimum required weekly hours. (UF at 3.) If a traveler satisfies her weekly hours requirement, she receives her full weekly per diem. (*Id.*) If, however, she does not satisfy the requirement for any reason other than the client facility cancelling a scheduled shift, her weekly per diem is adjusted by CHG pursuant to a Missed Shift Adjustment ("MSA"). (*Id.*) The MSA adjusts a specific proportional amount of per diems downward when employees' weekly hours fall short of their minimum hours' requirement. (*Id.*)

On September 29, 2017, plaintiff commenced this collective and class action against CHG based on its alleged failure to include all remuneration—specifically, the value of the per diems—in the regular rate of pay when calculating overtime pay for travelers. (Doc. No. 1 at 1.) Plaintiff asserts: (1) a class action claim for failure to pay overtime wages pursuant to California Labor Code §§ 510, 1194; (2) a class action claim for unfair business practices pursuant to California Business and Professions Code § 17200 *et seq.*; (3) a class action claim for waiting time penalties pursuant to California Labor Code §§ 201–03; and (4) a collective action claim for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216, due to failure to pay overtime wages. (*Id.* at 8–13.)

On May 14, 2019, both plaintiff and defendant CHG moved for summary judgment, with plaintiff seeking partial summary judgment as to liability only, and CHG seeking summary judgment in its favor as to each of plaintiff's four causes of action. (Doc. Nos. 31, 33.) On June 14, 2019, the parties filed their oppositions, and on July 2, 2019, their replies. (Doc. Nos. 34, 35, 36, 37.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including

3

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

/////

1  the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see*

2  *Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party need not

4  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

6  trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

7  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

8  *Matsushita*, 475 U.S. at 587 (citations omitted).

9        "In evaluating the evidence to determine whether there is a genuine issue of fact," the

10 court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v.*

11 *Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing

12 party's obligation to produce a factual predicate from which the inference may be drawn. *See*

13 *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d

14 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do

15 more than simply show that there is some metaphysical doubt as to the material facts. . . . Where

16 the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

17 there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

18 **DISCUSSION**

19 **A.**    **The Value of the Weekly Per Diem Given to Travelers is Part of the "Regular Rate"**

20       It is undisputed that CHG ties a traveler's weekly per diem amount to the number of hours

21 that she worked in that week.[2] (UF at 3.) The dispositive question then is whether the value of

22 these per diems that vary with the number of hours worked are to be included in a traveler's

23 regular rate for the purpose of calculating the traveler's overtime pay?

---

[2] CHG's MSA policy was revised during the class period. Whereas previously the MSA policy provided for a specific amount of the per diem to be reduced depending on the number of hours missed each shift, starting in 2016 the MSA policy was revised to provide for a specific amount of the per diem to be reduced for each one-half of a schedule missed. (Doc. No. 35-2 at 7–8.) This change does not affect the analysis set forth in this order since (1) neither party argues that is the case and (2) reductions based on each one-half of a missed schedule are still reductions based on hours worked.

5

Pursuant to the FLSA, an employer must pay a non-exempt employee overtime for hours worked in excess of forty hours in a single workweek at a rate that is at least one-and-a-half times his regular rate. 29 U.S.C. § 207(a)(1); *see also Flores v. City of San Gabriel*, 824 F.3d 890, 895 (9th Cir. 2016).[3] The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." *Id.* § 207(e). "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948) (internal quotation marks and citation omitted).

"The FLSA is construed liberally in favor of employees" and "[t]he employer bears the burden of establishing that it qualifies for an exemption under the Act." *Flores*, 824 F.3d at 897 (internal quotation marks and citations omitted). Exemptions are to be construed under "a fair (rather than a 'narrow') interpretation." *Encino Motorcars, LLC v. Navarro*, __U.S.__, __, 138 S. Ct. 1134, 1142 (2018). As relevant here, an employer may exclude from the regular rate

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; *reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer*; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

29 U.S.C. § 207(e)(2) (emphasis added).

CHG contends that it properly excludes the value of the per diems from travelers' regular rates because the per diems are "reimbursements that reasonably approximate expenses incurred

---

[3] The FLSA applies to plaintiff's state law overtime wage claims. *See Dittman v. Med. Sol., L.L.C.*, No. 2:17-cv-01851-MCE-CKD, 2019 WL 4302752, at *2 n.3 (E.D. Cal. Sept. 11, 2019) ("The discussion under California law is identical to the [FLSA] analysis, so only the latter is specifically addressed here."); *Junkersfeld v. Per Diem Staffing Sys., Inc.*, No. 4:18-cv-07795-KAW, 2019 WL 2247768, at *2 (N.D. Cal. May 24, 2019) ("[W]here there is an 'absence of controlling or conflicting California law, California courts generally look to federal regulations under the FLSA for guidance.'") (quoting *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 902 (2012)).

6

on [CHG's] behalf" and are therefore exempted under § 207(e)(2). (Doc. No. 33 at 9.) Plaintiff counters that where, as here, "payments ostensibly made as 'reimbursements' vary with the number of hours worked, as opposed to the amount of expenses incurred, the payments function not as a legitimate reimbursement but as compensation for working[] and are [therefore] part of the regular rate." (Doc. No. 31-1 at 6.)

The Ninth Circuit has not yet addressed whether the value of per diems that vary with the number of hours worked must be included in employees' regular rates for the purpose of calculating their overtime pay under the FLSA,[4] nor has it addressed the reimbursable expenses clause of § 207(e)(2). *Junkersfeld v. Per Diem Staffing Sys., Inc.*, No. 4:18-cv-07795-KAW, 2019 WL 2247768, at *3 (N.D. Cal. May 24, 2019) ("There does not appear to be any binding legal authority that is directly applicable to the instant case."); *Howell v. Advantage RN, LLC*, 401 F. Supp. 3d 1078, 1089 (S.D. Cal. 2019). Three other circuit courts, however, as well as a handful of district courts from within the Ninth Circuit have addressed this question and have concluded the value of per diems must be included in the regular rate under these circumstances.

In *Newman v. Advanced Technology Innovation Corp.*, the plaintiff-employees argued that the per diem they received should be included in their regular rates because the per diem operated like an hourly wage. 749 F.3d 33, 35 (1st Cir. 2014). The First Circuit agreed, concluding that the defendant-employer "impermissibly" reduced the employees' regular wage by labeling part of their compensation as a "per diem," even though those payments were "based upon and thus varie[d] with the number of hours worked[.]" *Id.* at 34–35. As the circuit court in *Newman* noted, "[t]he goal is to pierce the labels that parties affix to payments and instead look to the realities of the method of payment." *Id.* at 39. Similarly, in *Gagnon v. United Technisource, Inc.*, the Fifth Circuit held that "when, as here, the amount of per diem varies with the amount of hours worked, the per diem payments are part of the regular rate in their entirety." 607 F.3d 1036, 1041

---

[4] This precise question, however, is currently on appeal before the Ninth Circuit from a district court decision that CHG heavily relies on here in moving for summary judgment in its favor. *See Clarke v. AMN Services, LLC*, No. 2:16-cv-04132-DSF-KS, 2018 WL 3357467 (C.D. Cal. June 26, 2018), *appeal filed*, Docket No. 19-55784 (9th Cir. July 9, 2019). The district court's decision in *Clarke* is addressed below.

7

(5th Cir. 2010). More recently, the Eighth Circuit held that the "per diem" payments it was analyzing "function[ed] as a wage rather than as true per diem reimbursements" because "these Payments are based upon hours worked . . . and are thus correctly included in the regular rate calculation[.]" *Baouch v. Werner Enterprises, Inc.*, 908 F.3d 1107, 1111 (8th Cir. 2018), *cert. denied,* __U.S.__, 140 S. Ct. 122 (2019); *see also id.* at 1116 ("Per diem payments that vary with the amount of work performed are part of the regular rate.") (citing *Gagnon*, 607 F.3d at 1041–42 and *Newman*, 749 F.3d at 35–37). In so holding, the Eighth Circuit in *Baouch* focused on "the method of calculating the per diem," and noted that

> no matter that Werner's Payments were established to reimburse expenses the company reasonably expected its employees to incur, for purposes of the FLSA, we must further look to how these Payments were calculated for guidance. Because these Payments for the experienced drivers are based upon the amount of work performed (miles driven) they are part of the drivers' regular rate.

*Id.* at 1117.[5]

CHG argues that *Newman*, *Gagnon*, and *Baouch* "rely on **a different legal standard** than applies in this Circuit," arguing that in the Ninth Circuit the question is "whether the payment at issue is generally understood as compensation to the employee, ***not whether the payment is tied to specific hours worked by the employee***." (Doc. No. 35 at 14) (quoting *Flores*, 824 F.3d at

---

[5] CHG contends that the court should not consider the decisions in *Newman*, *Gagnon*, and *Baouch* because those courts "embrace[d] the guidance of the Department of Labor Field Operations Handbook ('FOH'), which has been expressly rejected as authority in this Circuit." (Doc. No. 35 at 15) (citing *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1011 (9th Cir. 2011)). In *Probert*, the Ninth Circuit noted that "it does not appear to us that the FOH is a proper source of interpretive guidance." 651 F.3d at 1012 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)). It is not clear to the undersigned that the court in *Probert rejected* the FOH as authority in this circuit, and CHG does not brief this argument beyond citing to *Probert*. The undersigned notes, however, that the circuit courts in *Newman*, *Gagnon*, and *Baouch* only considered the FOH as persuasive authority; none of those decisions relied on the FOH. *See, e.g.*, *Newman*, 749 F.3d at 39 (noting the FOH "contains *further* guidance, which we treat as persuasive authority") (emphasis added); *Gagnon*, 607 F.3d at 1041 n.6 (citing to the FOH *in a footnote* after reviewing the regulations interpreting § 207(e)(2) and noting that "[a]lthough the Handbook does not bind our analysis, we can and do consider its persuasive effect"); *Baouch*, 908 F.3d at 1117 (*after* considering the relevant regulations, the court noted that "[w]e treat the DOL Handbook as persuasive authority"). Accordingly, the persuasive value of *Newman*, *Gagnon*, and *Baouch* to the undersigned is not diminished by the fact that those courts considered the FOH in rendering their decisions.

8

899); (*see also* Doc. No. 33 at 15). The undersigned does not agree with CHG's position regarding the state of the law in the Ninth Circuit nor with its interpretation of the Ninth Circuit's decision in *Flores*. First, the circuit courts in *Newman*, *Gagnon*, and *Baouch* each addressed whether per diems that vary with the number of hours worked are excepted under § 207(e)(2)— the very question that is at the crux of the cross-motions for summary judgment pending before this court. In *Flores*, however, the Ninth Circuit addressed a different question.[6] Second, CHG's reliance on the decision in *Flores* for the proposition that district courts in the Ninth Circuit cannot look to whether a payment is tied to specific hours worked in determining whether that payment should be included in an employee's regular rate is misplaced. The court in *Flores* considered a question of first impression: whether § 207(e)(2)'s final clause (the "other similar payments to an employee which are not made as compensation for his hours of employment" clause, which is not at issue in this action) permits exclusion of unused cash-in-lieu of benefits payments which are not tied to hours worked. 824 F.3d at 898. In concluding that the cash-in-lieu of benefits payments before it were compensation, the Ninth Circuit held that "the 'key point' is whether the payment is 'compensation for work;'" thus, "payments that 'are not measured by the number of hours spent at work' are not automatically excludable" under § 207(e)(2)'s "other similar payments" clause. *Id.* at 899. In other words, the court in *Flores* held only that the lack of a link alone between payments and hours worked is not a sufficient basis upon which to find that the payments at issue are not compensation for work. The court in that case did not hold, as CHG incorrectly asserts here, that this court cannot consider whether payments **are** tied to hours worked in determining whether the value of those payments should be included in an employee's regular rate.

Accordingly, the court finds persuasive the rationale of the circuit courts in *Newman*, *Gagnon*, and *Baouch* and joins those California district courts that have held that weekly per diem payments that are tied to the number of hours worked in a given week, as here, are part of the regular rate for the purpose of calculating overtime pay. *See, e.g.*, *Dittman v. Med. Sol., L.L.C.*,

---

[6] Indeed, CHG concedes as much in acknowledging that "there is no Ninth Circuit case addressing per diems under Section 207(e)(2)." (Doc. No. 33 at 16.)

No. 2:17-cv-01851-MCE-CKD, 2019 WL 4302752, at *2 (E.D. Cal. Sept. 11, 2019) ("[R]educing the per diem and housing payments based on the number of shifts worked inextricably ties the payments to the hours worked, rendering them part of the employee's regular rate.") (quoting *Junkersfield*, 2018 WL 2247768, at *3); *Junkersfeld v. Per Diem Staffing Sys., Inc.*, No. 4:18-cv-07795-KAW, 2019 WL 3842067, at *2 (N.D. Cal. Aug. 15, 2019) (same); *Howell*, 401 F. Supp. 3d at 1090 ("[T]hat the per diem is paid weekly and adjusted based on hours or shifts worked makes the per diem function more as remuneration for hours worked than as reimbursement for expenses[.]").

Ninth Circuit law interpreting § 207(e)(2)'s clause concerning "other similar payments to an employee which are not made as compensation for his hours of employment" supports the court's conclusion in this regard. *See, e.g.*, *Flores*, 824 F.3d 890; *Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292 (9th Cir. 1996). In *Flores*, the Ninth Circuit noted that "we focus our inquiry on *whether a given payment is properly characterized as compensation* . . . when determining whether that payment falls under § 207(e)(2)'s 'other similar payments' clause." 824 F.3d at 900 (emphasis added). Similarly, in *Local 246*, an opinion that the court in *Flores* relied upon, the Ninth Circuit focused on the "[t]he entire *function* of the[] supplemental payments" at issue there, determined that the "payments necessarily compensate[d] for hours of employment," and concluded that they, therefore, "may not be excluded from the regular rate." 83 F.3d at 295 (emphasis added). In addressing different forms of compensation—such as health benefit reimbursements and vacation time—district courts within the Ninth Circuit have found *Local 246*'s emphasis on how a payment *functions* to guide the determination of whether those payments are exempt from the regular rate under § 207(e)(2). *See, e.g.*, *Callahan v. City of Sanger*, No. 14-cv-00600-BAM, 2015 WL 2455419, at *7 (E.D. Cal. May 22, 2015) (finding the reasoning in *Local 246*, "while not directly on point," to be "instructive," and concluding that health benefit reimbursements were not excludable because they were "tied to [the employees'] compensation for hours of employment"); *Dietrick v. Securitas Sec. Servs. USA, Inc.*, 50 F. Supp. 3d 1265, 1267, 1271 (N.D. Cal. 2014) (finding that vacation pay that was tied to hours worked was not excluded under § 207(e)(2) and noting, with reference to *Local 246*, that

"the few opinions addressing the applicability of the § 207(e)(2) exemption support the notion that payments based on hours worked . . . do not fall within the scope of § 207(e)(2)"). Because the per diems at issue here are based on the number of hours a traveler works each week, this court also finds the court's emphasis in *Local 246* on the function of a payment to be instructive.

The regulations interpreting § 207(e)(2) also support the conclusion that tying a weekly per diem amount to the number of hours worked in that week requires including the value of the per diem in an employee's regular rate. These regulations appear under the heading "Payments Not for Hours Worked" under "Subpart C—Payments that May be Excluded from the 'Regular Rate.'" *See Almendarez-Torres v. U.S.*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotation marks and citation omitted). The substance of the relevant regulations makes clear that § 207(e)(2) is meant to exempt forms of compensation that are not based on hours worked. For example, the regulation titled "The provisions of section 7(e)(2) of the Act" begins by reciting verbatim § 207(e)(2) and then notes that payments that are excluded from the "regular rate" under that section "are *not made as compensation for the employee's hours worked in any workweek.*" 29 C.F.R. § 778.216 (emphasis added). Similarly, the regulation interpreting the "Other similar payments" clause of § 207(e)(2) and titled the same, provides that the eight regulations immediately preceding it—which includes the regulation interpreting "Reimbursement for Expenses," 29 C.F.R. § 778.217—"enumerate[] and discuss[] the basic types of payments" that are excluded from the regular rate "*because they are not made as compensation for hours of work.*" 29 C.F.R. § 778.224 (emphasis added).

CHG argues that its practice of reducing travelers' weekly per diems based on hours worked does not transform those per diems into compensation for hours worked but instead "ensures the reasonableness of CHG's estimated reimbursement of expenses incurred on its behalf." (Doc. No. 25 at 6–7); *see also* 29 C.F.R. § 778.217(d) (noting that "[t]he expenses for which reimbursement is made must in order to merit exclusion from the regular rate under this section, be expenses incurred by the employee on the employer's behalf or for his benefit or convenience"). In so arguing, CHG relies heavily on the district court's decision in *Clarke v.*

11

*AMN Services, LLC*, No. 2:16-cv-04132-DSF-KS, 2018 WL 3357467 (C.D. Cal. June 26, 2018), *appeal filed*, Docket No. 19-55784 (9th Cir. July 9, 2019), in which the court concluded that "reducing payments for hours not worked would, if anything, logically make the payments better at reflecting expenses incurred for the benefit of the employer, not worse." 2018 WL 3357467 at *2. The undersigned finds CHG's reliance on *Clarke* is unavailing.

First, the rationale adopted in *Clarke* has been rejected by every district court that has subsequently been presented with the same question. *See Junkersfeld*, 2019 WL 2247768, at *3 ("*Clarke* overlooked that employees remain away from home on the employer's business for the entirety of their travel assignments.") (internal quotation marks and citation omitted); *Dittman*, 2019 WL 4302752, at *2 ("The Court finds the reasoning in *Junkersfeld* more persuasive [than the reasoning in *Clarke*] and concludes that Plaintiff is entitled to judgment as a matter of law on this issue."); *Howell*, 401 F. Supp. 3d at 1091 (noting that "there is no apparent nexus between the expenses incurred and the per diem payments" before it and finding that the court in *Clarke* "did not address this issue"). As discussed in footnote 4 above, *Clarke* is currently on appeal before the Ninth Circuit.

Second, on December 16, 2019—after the decision in *Clarke* was issued and after the pending cross-motions for summary judgment were taken under submission—the regulations interpreting the FLSA were amended, including the regulation interpreting "Reimbursement for expenses." *See* 29 C.F.R. § 778.217. As relevant here, part of that regulation now reads:

> A reimbursement amount for an employee traveling on his or her employer's business is per se reasonable, and not disproportionately large, if it:
>
> (i) Is the same or less than the maximum reimbursement payment or per diem allowance permitted for the same type of expense under 41 CFR subtitle F (the Federal Travel Regulation System) or IRS guidance issued under 26 CFR 1.274–5(g) or (j); and
>
> (ii) *Otherwise meets the requirements of this section*.

*Id.* § 778.217(c)(2) (emphasis added). In its final rule updating the regulation, the Wage and Hour Division of the Department of Labor (DOL) clarified what is meant by "[t]hose other requirements," namely that "a payment for an employee traveling on his or her employer's

12

business is per se reasonable if it is . . . for the 'actual or reasonably approximate amount' of the expense, [] the expense [is] incurred on the employer's behalf, and [] the expense [does] *not vary with hours worked*." Regular Rate Under the Fair Labor Standards Act, 84 Fed. Reg. 68736, 68745 (December 16, 2019) (emphasis added). Notably, the DOL relied on the Eighth Circuit's opinion in *Baouch* in issuing the final rule. *See id.* at 68745 n.97 (citing *Baouch*, 908 F.3d at 116 ("Per diem payments that vary with the amount of work performed are part of the regular rate.")). Because the final rule is meant "to provide clarity" on the DOL's amendments to the regulations and "to better reflect the 21st-century workplace", *id.* at 68736, and because regulations and final rules are presumed to be valid unless they contain a clear error of judgment, *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1094 (9th Cir. 2005), *as amended* (Aug. 17, 2005), the DOL's clarification—that a reimbursement expense is not reasonable if it varies with hours worked—renders the reasoning adopted by the district court in *Clarke* unpersuasive. In other words, CHG's practice of reducing travelers' per diems based on hours worked does *not* make them more reasonable reimbursements for expenses; rather, that practice confirms that the per diems are remuneration for hours worked.

Several other "seemingly obvious indicators," *Baouch*, 908 F.3d at 117, lend further credence to the conclusion that the per diems at issue here constitute remuneration for hours worked. The undisputed facts before this court on summary judgment establish that: the per diems are included in the employee's weekly electronic deposit or paycheck and appear as two separate line items on traveler's weekly paystub; travelers are not required to provide verification of actual expenses incurred in order to receive the per diem; and CHG does not restrict how the travelers spend the per diems. The court in *Baouch* found the same factors relevant to its determination. *See* 908 F.3d at 1118. Moreover, when the average hourly per diem rate for the class is combined with the average base hourly wage for the class, it results in a combined pay rate of approximately $50.57. (*See* Doc. No. 35-2 at 12–13.) This figure is "suspiciously close," *Baouch*, 908 F.3d at 1117, to the prevailing hourly wage for nurses in California, which is

/////

/////

$50.13.[7] (Doc. Nos. 31-1 at 18); *see also Gagnon*, 607 F.3d at 1041 ("It is difficult to believe that a skilled craftsman would accept a wage so close to the minimum wage when the prevailing wage for similarly skilled craftsmen was approximately three times the minimum wage.").

The court concludes that the weekly per diem that CHG furnishes to a traveler constitutes remuneration for hours worked and its value must therefore be included in the traveler's regular rate for the purpose of calculating her overtime pay. Accordingly, the court will deny CHG's motion for summary judgment in its entirety. The court will also grant summary judgment in plaintiff's favor on the issue of CHG's liability as to her first and fourth causes of action in which she alleges a failure to pay overtime under the California Labor Code and the FLSA, respectively. Moreover, because plaintiff's second cause of action—alleging violations of the California Business and Professions Code—is derivative of her unpaid overtime claims, the court will grant summary judgment in plaintiff's favor on the issue of CHG's liability as to that cause of action as well. (*See* Doc. Nos. 19-3 at 19; 33 at 24); *Clarke*, 2018 WL 3357467, at *1 n.1.

**B.    The Collective is Not Entitled to a Three-Year Statute of Limitations**

"Successful FLSA plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014) (citing 29 U.S.C. § 255(a)). "When a violation is 'willful,' however, the statute of limitations extends to three years." *Id.*; *Flores*, 824 F.3d at 895. "To show willfulness, a plaintiff must demonstrate that the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v.*

---

[7] CHG does not dispute that $50.13 is the prevailing hourly wage for registered nurses in California (*see* Doc. No. 35-2 at 12) but objects to plaintiff's reliance on the average hourly rate for registered nurses in California as the comparison point, arguing that "[t]his case does not involve registered nurses employed as permanent staff at healthcare facilities in California" and that "the class in this case includes multiple types of contingent healthcare professionals who *are not* registered nurses." (Doc. No. 35 at 19–20.) CHG's counsel raised this same objection before the court in *Howell*, which "recognized that there may be some merit to Defendant's objections to that evidence," but still found it "striking that Defendant's hourly wage and per diem stipend calculated per minimum required hour per week for members of the California class comes to $47.13 to $49.80 per hour, . . . whereas the average hourly rate for registered nurses in California was approximately $49 to $50 per hour." 401 F. Supp. 3d at 1091. The undersigned shares this same concern based on how close the average combined pay for the class is with the average hourly rate for registered nurses in California.

1    *Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "An employer who knows of a risk that its
2    conduct is contrary to law, yet disregards that risk, acts willfully."  *Id.*

3    Plaintiff argues that the statute of limitations should be extended to three-years here
4    because "CHG is aware of the substantial body of case law and statutory authority [as discussed
5    in its motion] holding that reimbursement payments based on hours worked must be included in
6    the regular rate." (Doc. No. 31-1 at 20.)  Plaintiff contends that, despite this knowledge, "CHG
7    has continued to exclude the . . . per diem payments from the regular rate." (*Id.*)  On that basis,
8    plaintiff argues that CHG's conduct was willful as contemplated by the FLSA.  CHG counters
9    that "Plaintiff cites no evidence in support of her position" and, based on the *Clarke* court's
10   decision, "there is no reason to believe [the] CHG policy is unlawful and it need not have
11   changed its policy in response to out-of-circuit, factually inapplicable decisions." (Doc. No. 35 at
12   22.)  Plaintiff replies that, "[b]y seeking shelter in a single district court decision and choosing to
13   ignore the great weight of contrary authority, CHG has disregarded the very possibility that its
14   conduct violated the statute." (Doc. No. 26 at 5.)

15   In support of her position regarding the applicable statute of limitations, plaintiff points
16   only to the cases that she cites to in her briefs.  But, as discussed above, there is no Ninth Circuit
17   authority addressing the specific issue of whether per diems that vary with the amount of hours
18   worked in a week are part of an employee's regular rate.  While it might be true that CHG
19   "kn[ew] of a risk that its conduct is contrary to law" based on the existence of conflicting case
20   law, plaintiff has produced no evidence suggesting that CHG did not take affirmative action to
21   assure compliance with the FLSA.  *Haro*, 745 F.3d at 1258.  In *Haro*, for example, the Ninth
22   Circuit found that a city's conduct was willful where the city had "extensively litigated the
23   meaning" of the section of the FLSA at issue and where the timing of certain reassignments
24   "provide[d] further evidence that the City's behavior was willful."  *Id.*  There is no such evidence
25   before this court. CHG adopted a position that was supported by the district court's decision in
26   *Clarke*, albeit a position that was inconsistent with that taken by other circuits and has since been
27   rejected by other district courts in California who have been called upon to consider it.  Because
28   under these circumstances it cannot be said that CHG's violation of the FLSA for failure to pay

1   overtime wages was willful, the court will deny plaintiff's motion for partial summary judgment

2   to the extent it seeks the application of a three-year statute of limitations with respect to her FLSA

3   claim. *See also Dittman*, 2019 WL 4302752, at *3 ("The undisputed evidence in the record

4   makes clear that Defendant did not act willfully. To the contrary, Defendant's interpretation was

5   objectively reasonable and supported by the decision in *Clarke*.").

**C.    The Collective is Entitled to Liquidated Damages**

"In addition to overtime compensation, successful FLSA plaintiffs are entitled to liquidated damages in the amount of the unpaid overtime compensation (i.e. double damages)." *Haro*, 745 F.3d at 1259 (citing 29 U.S.C. § 216(b)). "Double damages are the norm; single damages are the exception." *Id.* "Liquidated damages are mandatory unless the employer can overcome the difficult burden of proving both subjective good faith and objectively reasonable grounds for believing that it was not violating the FLSA." *Id.* (internal quotation marks and citation omitted).

Plaintiff contends that "[t]here is no evidence in the record that CHG had an honest intention to ascertain and follow the dictates of the FLSA." (Doc. No. 33-1 at 20.) Plaintiff points out that "CHG has not even attempted to meet its burden in opposition."[8] (Doc. No. 36 at 4.) Accordingly, plaintiff argues that the collective is entitled to liquidated damages as a matter of law. Because CHG has proffered no evidence to establish that it had an honest intention to ascertain and follow the dictates of the FLSA, the court concludes that plaintiff is entitled to summary judgment on the issue of CHG's liability for liquidated damages as a matter of law. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) ("Where the employer fails to carry that burden . . . liquidated damages are mandatory.") (internal quotation marks and citation omitted), *aff'd,* 546 U.S. 21 (2005); *Howell*, 2019 WL 3858896, at *12 (granting summary judgment in plaintiff's favor as to defendant's liability for liquidated damages where defendant did "not . . .

/////

---

[8] CHG did argue that plaintiff's motion for summary judgment as to liquidated damages is premature because she has moved for summary judgment as to liability only. (Doc. No. 35 at 21.) But as plaintiff correctly replies, she "is seeking a partial summary judgment ruling that CHG is liable for liquidated damages." (Doc. No. 36 at 4.)

16

introduce evidence of its subjective good faith"); *Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 923 (N.D. Cal. 2014) (same).

**D.     Plaintiff is Not Entitled to Waiting Time Penalties for Failure to Pay All Overtime at Time of Termination**

"If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201. "If an employer *willfully* fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Id.* § 203 (emphasis added). Here, the central question is whether CHG's failure to pay unpaid overtime was willful. Similar to the court's analysis of plaintiff's position concerning the statute of limitations under the FLSA, the court concludes that plaintiff has not established that CHG "intentionally failed or refused to perform an act which was required to be done." *Yuckming Chiu v. Citrix Sys., Inc.*, No. SA CV 11-1121 DOC, 2011 WL 6018278, at *4 (C.D. Cal. Nov. 23, 2011). Indeed, as already discussed, CHG had a "good faith dispute" on the issue of whether the value of the per diem was to be included in a traveler's regular for the purposes of calculating her overtime pay. *See* Cal. Code Regs. tit. 8, § 13520 ("A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.").

Accordingly, the court will deny plaintiff's motion for partial summary judgment on the issue of her entitlement to waiting time penalties under California law.

**CONCLUSION**

For the reasons set forth above,

1.     Defendant CHG motion for summary judgment (Doc. No. 33) is denied;

2.     Plaintiff's partial motion for summary judgement as to liability only (Doc. No. 31) is granted in part as follows:

/////

17

  a. Plaintiff's motion is granted with respect to her class action claim brought under the California Labor Code for failure to pay overtime;

  b. Plaintiff's motion is granted with respect to her class action claim for violations of California's Business and Professions Code;

  c. Plaintiff's motion is granted with respect to her collective action claim for violations of the FLSA for failure to pay overtime;

  d. The FLSA collective is entitled to liquidated damages;

  e. Plaintiff's motion is denied in all other respects;

3. The stay on this case entered on November 1, 2019 (Doc. No. 54) is lifted; and

4. The parties are directed to file a stipulation and proposed order with the assigned magistrate judge within thirty (30) days after the issuance of this order suggesting dates rescheduling this action, including dates for a mandatory settlement conference and all other pretrial and trial dates.

IT IS SO ORDERED.

Dated: **May 15, 2020**

UNITED STATES DISTRICT JUDGE