1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JACQUELINE CARLINO, an individual           No.  1:17-cv-01323-DAD-BAK (EPG)
     on behalf of herself and others similarly
12   situated,

13                  Plaintiff,                    ORDER GRANTING PLAINTIFF'S MOTION
                                                  TO AMEND CLASS AND COLLECTIVE
14          v.                                    DEFINITIONS AND DENYING
                                                  DEFENDANT'S MOTION FOR
15   CHG MEDICAL STAFFING, INC.,                  RECONSIDERATION OR, IN THE
                                                  ALTERNATIVE, DECERTIFICATION
16                  Defendant.
                                                  (Doc. Nos. 71, 73)
17

18          This matter is before the court on plaintiff's motion to amend the certified class and

19   collective definitions, filed on September 29, 2021, and defendant's motion for reconsideration of

20   the court's order granting partial summary judgment in favor of plaintiff, or in the alternative, for

21   decertification of the class and collective, filed on September 15, 2021.[1]  (Doc. Nos. 71, 73.)

22   _____

23   [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
     overwhelming caseload has been well publicized and the long-standing lack of judicial resources
24   in this district long-ago reached crisis proportion.  While that situation was partially addressed by
     the U.S. Senate's confirmation of district judges for two of this court's vacancies on December
25   17, 2021 and June 21, 2022, another vacancy on this court with only six authorized district judge
     positions was created on April 17, 2022.  For over twenty-two months the undersigned was left
26   presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants.
     That situation resulted in the court not being able to issue orders in submitted civil matters within
27   an acceptable period of time and continues even now as the undersigned works through the
     predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly
28   frustrating it is to the parties and their counsel.

                                                  1

Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, the motions were taken under submission on the papers.  (Doc. No. 74.)  For the reasons explained below, the court will grant plaintiff's motion to amend the class and collective definitions and deny defendant's motion for reconsideration, or in the alternative, decertification.

## BACKGROUND

On September 29, 2017, plaintiff Jacqueline Carlino, a traveling nurse, filed a class and collective action complaint on behalf of herself and others similarly situated against her employer, defendant CHG Medical Staffing Inc. ("CHG"), alleging that CHG violated the Fair Labor Standards Act ("FLSA") and California state law by failing to pay overtime wages to its staff of traveling nurses and technicians ("travelers").  (Doc. No. 1.)  In particular, plaintiff alleges that CHG does not include the value of a weekly per diem (a stipend for meals, incidentals, and housing that travelers receive in addition to their weekly wages) (the "per diem") in determining a traveler's regular rate for the purpose of calculating that traveler's overtime pay, which is one-and-a-half times the traveler's regular rate.  (*Id.* at ¶¶ 12, 16.)

On February 28, 2019, the court granted plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) and conditional certification of an FLSA collective, certifying the following:

> [Rule 23 Class:]  All non-exempt hourly healthcare professionals employed in California through the RN Network division of CHG Medical Staffing, Inc., who, at any time from September 29, 2013 through the date of certification, worked overtime and had the value of their meals and incidental stipends, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay.

> [FLSA Collective:]  All non-exempt hourly healthcare professionals employed in the United States through the RN Network division of CHG Medical Staffing, Inc. who, at any time within the three years preceding certification, worked in excess of 40 hours in one or more workweeks and had the value of their meals and incidentals stipend, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay.

(Doc. No. 25 at 17–18.)

/////

1    On May 15, 2022, the court issued an order denying defendant's motion for summary

2 judgment and granting plaintiff's motion for partial summary judgment as to defendant's liability,

3 in part. (Doc. No. 58.) Specifically, the court concluded that "the weekly per diem that CHG

4 furnishes to a traveler constitutes remuneration for hours worked and its value must therefore be

5 included in the traveler's regular rate for the purpose of calculating her overtime pay." (*Id.* at 14.)

6 In reaching this conclusion, the court considered not only the fact that the per diem payments are

7 "tied to the number of hours worked in a given week," but also that several other indicators

8 suggested that the per diems functioned as renumeration for hours worked, including that: "the

9 per diems are included in the employee's weekly electronic deposit or paycheck and appear as

10 two separate line items on traveler's weekly paystub; travelers are not required to provide

11 verification of actual expenses incurred in order to receive the per diem; and CHG does not

12 restrict how the travelers spend the per diems." (*Id.* at 10–13.) Accordingly, the court granted

13 "summary judgment in plaintiff's favor on the issue of CHG's liability" as to plaintiff's overtime

14 claims and her derivative claim brought under the Unfair Competition Law ("UCL"). (*Id.*) The

15 relevant undisputed facts are as follows.

16    Defendant CHG staffs travelers on short-term travel assignments, primarily at hospitals

17 across the United States. (Doc. No. 32 at 2.) Between October 2015 and August 2016, CHG

18 staffed plaintiff Carlino, a permanent resident of Pennsylvania, on three 13-week travel

19 assignments, two in Wisconsin and one in Bakersfield, California. (*Id.* at 4.) The typical travel

20 assignment lasted thirteen weeks and required employees to be away from their homes for the

21 duration of the assignment. (*Id.* at 2.) Travelers incurred meal, incidental, and lodging expenses

22 while away from their permanent residences at their assignment locations. (*Id.*) In addition to

23 their weekly wages, travelers were provided weekly per diem payments covering seven days'

24 worth of meals, incidentals, and housing in the form of a housing allowance or company-provided

25 housing. (*Id.*) To determine the per diem, CHG used the federal government's Continental

26 United States per diem rates set by the General Services Administration and the Internal Revenue

27 Service. (*Id.*) The per diems were included in travelers' weekly electronic deposits or paychecks

28 and appeared as two separate line items on their weekly paystubs. (*Id.*) Travelers were not

3

1    required to provide verification of actual expenses in order to receive per diems, and CHG did not

2    restrict how travelers spent their per diems.  (*Id.*)  Whether a traveler is entitled to the full weekly

3    per diem each week is conditioned on whether she has worked the specified minimum weekly

4    hours required by CHG, which is generally thirty-six hours consisting of three twelve-hour shifts.

5    (*Id.* at 3.)  If a traveler satisfies her weekly hours requirement, she receives her full weekly per

6    diem.  (*Id.*)  If, however, she does not satisfy the requirement for any reason other than the client

7    facility cancelling a scheduled shift, her weekly per diem is adjusted by CHG pursuant to a

8    Missed Shift Adjustment ("MSA").  (*Id.*)  The MSA adjusts a specific proportional amount of per

9    diems downward when travelers' weekly hours fall short of their minimum hours requirement.

10   (*Id.*)

11        On September 15, 2021, defendant filed the pending motion for reconsideration of the

12   court's order granting partial summary judgment in plaintiff's favor as to defendant's liability on

13   plaintiff's overtime claims and derivative UCL claim.  (Doc. No. 71.)  In the alternative,

14   defendant moved for an order decertifying the Rule 23 class and FLSA collective.  (*Id.*)  Plaintiff

15   filed an opposition to defendant's pending motion on October 15, 2021, and defendant filed its

16   reply thereto on October 29, 2021.  (Doc. Nos. 75, 76.)

17        On September 29, 2021, plaintiff filed the pending motion to amend the definitions of the

18   Rule 23 class and the FLSA collective.  (Doc. No. 73.)  Defendant filed an opposition to

19   plaintiff's motion on November 1, 2021, and plaintiff filed her reply thereto on November 8,

20   2021.  (Doc. Nos. 77, 78.)

21        While the motions have been pending before the court, the parties have also filed notices

22   of supplemental authority and responses thereto.  (Doc. Nos. 85, 88–92.)

23                                    **DISCUSSION**

24   **A.    Plaintiff's Motion to Amend the Class and Collective Definitions**

25        Rule 23 provides that "[a]n order that grants or denies class certification may be altered or

26   amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  Thus, "[e]ven after a certification

27   order is entered, the judge remains free to modify it in the light of subsequent developments in the

28   litigation."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Roy v. Cnty. of Los*

4

1   *Angeles*, No. 1:12-cv-09012-AB-FFM, 2018 WL 3435417, at *2 (C.D. Cal. July 11, 2018)

2   (noting that "the district court retains flexibility and is free to modify a class definition in light of

3   developments during the course of litigation").  Courts also have broad discretion to modify class

4   definitions and to grant plaintiffs leave to amend class definitions.  *See Williams v. City of*

5   *Antioch*, No. 4:08-cv-02301-SBA, 2010 WL 3632197, at *7 (N.D. Cal. Sept. 2, 2010) (citing

6   *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (noting that

7   district courts "must be vigilant to ensure that a certified class is properly constituted" and "make

8   appropriate adjustments to the class definition as the litigation progress[es]").  "Consequently,

9   courts retain discretion to revisit class certification throughout the legal proceedings, and may

10  rescind, modify, or amend the class definition," though any amendment to the class definition

11  must still satisfy Rule 23's requirements.  *Howell v. Advantage RN, LLC*, 401 F. Supp. 3d 1078,

12  1085 (S.D. Cal. 2019) (citations and internal quotation marks omitted); *see, e.g.*, *Ruiz Torres v.*

13  *Mercer Canyons Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016) (concluding that the defined class fits

14  plaintiff's legal theory of defendant's liability and noting that "[a]s the case progresses, the

15  district court may elect to separate the class into subclasses, or adjust the scope of the class

16  definition, if it later finds that the inclusiveness of the class exceeds the limits of [defendant's]

17  legal liability under" plaintiff's theory.)  Courts have similar discretion to modify the definition of

18  a conditionally certified FLSA collective.  *See Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-

19  06751-JSC, 2021 WL 2805604, at *2 (N.D. Cal. July 6, 2021) ("The Court retains inherent

20  authority to modify the FLSA conditional certification order and reconsider its prior rulings.").

21        Here, plaintiff seeks to amend the definitions of the certified class and FLSA collective to

22  exclude individuals who, according to the data produced during discovery in this case, suffered

23  no damages as a result of defendant's practice of excluding the value of the per diem in

24  calculating the overtime rate.  (Doc. No. 73 at 4.)  Specifically, some individuals received extra

25  compensation and were therefore paid a "sufficiently high overtime rate" (above the statutorily

26  required minimum) notwithstanding the exclusion of the per diem from their overtime rate

27  calculation.  (*Id.* at 4, 7.)  In other words, those individuals already received a higher overtime

28  rate than they would have received even if their per diem had been included in their overtime rate

calculation.  For that reason, plaintiff seeks to amend both the class and collective definitions to

add identical clarifying language to each, bolded below, as follows:

> [Rule 23 Class:]  All non-exempt hourly healthcare professionals employed in California through the RN Network division of CHG Medical Staffing, Inc., who, at any time from September 29, 2013 through the date of certification, worked overtime and had the value of their meals and incidental stipends, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay**, and were paid overtime at a rate that was less than one and one-half (1 ½) times what their regular rate would have been had the value of their housing and/or meal and incidental benefits been included**.
>
> …
>
> [FLSA Collective:]  All non-exempt hourly healthcare professionals employed in the United States through the RN Network division of CHG Medical Staffing, Inc. who, at any time within the three years preceding certification, worked in excess of 40 hours in one or more workweeks and had the value of their meals and incidentals stipend, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay**, and were paid overtime at a rate that was less than one and one-half (1 ½) times what their regular rate would have been had the value of their housing and/or meal and incidental benefits been included**.

(*Id.* at 2, 8.)  According to plaintiff, the individuals who would be excluded from the class and the

collective under these amended definitions can be identified from the spreadsheets of weekly

payroll data that defendant produced in discovery, which has the "data necessary to compare the

overtime rate actually paid with the overtime rate that should have been paid if per diem benefits

were included in the regular rate." (*Id.* at 6.)  Plaintiff also notes that in defendant's pending

motion for reconsideration, defendant represents that based on its analysis of that data, 18 of the

686 members of the class and 125 of the 295 members of the collective suffered no damages.

(*Id.*)  Under plaintiff's proposed amended definitions, those individuals would no longer be

included in the class and/or collective, yet the numerosity requirement certification would still be

easily satisfied.

In its opposition to plaintiff's motion to amend the class and collective definitions,

defendant contends that plaintiff's proposed amendments are impermissible because the class and

collective cannot be "defined in terms of success on the merits," such that "membership in the

1    class depends on whether the putative member has a valid claim." (Doc. No. 77 at 2.)  Defendant

2    takes issue with plaintiff's use of the phrase "sufficiently high" in her motion and argues that

3    whether an individual's overtime rate was "sufficiently high" would have to be resolved by the

4    court on the merits.  (*Id.* at 3.)  However, "sufficiently high" is not the terminology plaintiff uses

5    in the proposed amended definition.  In addition, defendant mischaracterizes the proposed

6    amendment as requiring a determination by the court (on the merits) that the per diem should

7    have been included in the overtime rate calculation in order to determine whether an individual is

8    included or excluded from the class and/or collective.  (*See id.* at 3–5.)  But the proposed

9    amendments clearly do not rely upon the court concluding that the per diem *should have been*

10   included; rather, those definitions simply state that the class and collective includes individuals

11   who "were paid overtime at a rate that was less than one and one-half (1 ½) times what their

12   regular rate *would have been* had the value of their housing and/or meal and incidental benefits

13   been included." (*See* Doc. No. 73 at 2.)  Because defendant does not appreciate this distinction,

14   its arguments that plaintiff's amended definitions would create a "fail safe" class and collective

15   ring hollow.  (Doc. No. 77 at 3–4.)[2]

16        Accordingly, the court will exercise its discretion and grant plaintiff's motion to amend

17   the certified class and FLSA collective definitions as requested because plaintiff has

---

18   [2]  On July 22, 2022, defendant filed a notice of supplemental authority to notify the court of a

19   recent decision in *Dittman v. Medical Solutions, L.L.C.*, No. 2:17-cv-01851-MCE-CKD, 2022
     WL 2873054, at *2 (E.D. Cal. July 21, 2022), which defendant contends supports the denial of

20   plaintiff's motion to amend.  However, the cited case is readily distinguishable from this one.  In
     *Dittman*, the court denied the plaintiff's motion to amend the definition of a certified class and

21   FLSA collective and granted the defendant's motion for decertification because certification was
     improper for several reasons.  2022 WL 2873054, at *2.  First and foremost, the plaintiff had

22   apparently signed an arbitration agreement, as had an unspecified, unknown number of class and
     collective members.  (*Id.*)  Second, it was "unclear how many putative class members actually

23   may have suffered damages under Defendant's overtime policy," which also meant that it was
     "unclear from the record whether the statutory certification prerequisites have been met given the

24   presence of class members who were not injured by Defendant's challenged practices."  (*Id.* at
     *1–2.)  Here, in contrast, there is no issue with any arbitration agreements or the adequacy of

25   plaintiff as a representative.  Moreover, allowing plaintiff's proposed amendments to the class
     and collective definitions does not result in an unknown number of class and collective members

26   or too few members such that the numerosity requirement may no longer be satisfied.  Simply
     put, the concerns expressed by the district court in *Dittman* are clearly not at issue here.

27

28

1  demonstrated that doing so will "winnow out" identifiable, non-injured members.  *See Ruiz*

2  *Torres v. Mercer Canyons Inc.*, 835 F.3d at 1137 (concluding that "fortuitous non-injury to a

3  subset of class members does not necessarily defeat certification of the entire class, particularly as

4  the district court is well situated to winnow out those non-injured members at the damages phase

5  of the litigation, or to refine the class definition").

6  **B.  Defendant's Motion for Reconsideration**

7  Defendant also moves pursuant to Rule 54(b) and Rule 60(b) of the Federal Rules of Civil

8  Procedure for reconsideration of the court's order granting partial summary judgment in

9  plaintiff's favor as to liability only.  (Doc. No. 71.)

10  Rule 54(b) provides that "any order or other decision, however designated, that

11  adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and

12  may be revised at any time before the entry of a judgment adjudicating all the claims . . . ."  Fed.

13  R. Civ. P. 54.  In contrast, Rule 60(b) provides that "[o]n motion and just terms, the court may

14  relieve a party or its legal representative from a *final* judgment, order, or proceeding," for certain

15  reasons.  Fed. R. Civ. P. 60(b) (emphasis added).  Because the court's order granting partial

16  summary judgment is interlocutory and not final,[3] Rule 54(b) provides the basis for possible

17  reconsideration of that order.  *See Doutherd v. Montesdeoca*, No. 2:17-cv-02225, 2021 WL

18  1784917, at *2 (E.D. Cal. May 5, 2021) (applying Rule 54(b) as the "proper vehicle for

19  requesting reconsideration of the prior order" granting summary judgment to defendant because

20  that order was interlocutory in nature, not a final judgment); *Frontier Fed. Sav. & Loan v. United*

21  *States*, No. 89-cv-251-AAM, 1992 WL 155444, at *1 (E.D. Wash. Apr. 6, 1992) (noting that Rule

22  54(b) is "the analytical starting point for the reconsideration (or possible reconsideration) of an

23

24

25

26

27

28

---

[3]  "Orders granting partial summary judgment are, absent special circumstances, not appealable final orders under § 1291 because partial summary judgment orders do not dispose of all claims and do not end the litigation on the merits."  *Williamson v. UNUM Life Ins. Co. of Am.*, 160 F.3d 1247, 1250 (9th Cir. 1998); *see also Persistence Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626, 627 (N.D. Cal. 2001) ("Unlike an order granting judgment, however, an order granting partial summary judgment is interlocutory in nature and does not terminate the action as to all of the claims and parties."); *Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-cv-1865-GPC-LL, 2021 WL 1945714, at *2 (S.D. Cal. May 14, 2021) (noting "that Rule 60(b) and Rule 59(e) do not apply to non-final appealable orders").

8

1    order granting or denying a motion for summary judgment (or partial summary judgment)").

2          The Ninth Circuit has "long recognized 'the well-established rule that a district judge

3    always has power to modify or to overturn an interlocutory order or decision while it remains

4    interlocutory.'"  *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005)

5    (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)); *see also City

6    of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As

7    long as a district court has jurisdiction over the case, then it possesses the inherent procedural

8    power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be

9    sufficient.") (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)).  "The

10   authority of district courts to reconsider their own orders before they become final, absent some

11   applicable rule or statute to the contrary, allows them to correct not only simple mistakes, but also

12   decisions based on shifting precedent, rather than waiting for the time-consuming, costly process

13   of appeal."  *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000).

14         Here, defendant urges the court to reconsider its order granting partial summary judgment

15   because, according to defendant, the Ninth Circuit's decision in *Clarke v. AMN Services, LLC*,

16   987 F.3d 848 (9th Cir.), *cert. denied*, __U.S.__, 142 S. Ct. 710 (2021) ("*Clarke*"), constitutes an

17   intervening change in the law that compels reconsideration here.  (Doc. No. 71 at 9, 12.)  In

18   *Clarke*, the Ninth Circuit held that "[i]n determining a payment's function, the tie between

19   payments and time worked is relevant but not determinative in assessing whether those payments

20   are properly excludable from the regular rate under § 207(e)(2)," and "[i]n the context of per diem

21   payments in particular, the function test requires a case-specific inquiry based on the particular

22   formula used for determining the amount of the per diem."  987 F.3d at 853–54.  However, as

23   plaintiff notes in her opposition to the pending motion for reconsideration, this function test was

24   not newly announced by the Ninth Circuit in *Clarke*.  (Doc. No. 75 at 10.)  Rather, in *Clarke*, the

25   Ninth Circuit began by considering how it had previously "assessed whether payments are

26   excludable from the FLSA's regular rate of pay under § 207(e)(2)," specifically its prior decisions

27   in *Local 246 Utility Workers Union of America v. Southern California Edison Co.*, 83 F.3d 292

28   (9th Cir. 1996) ("*Local 246*") and *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016)

1  ("*Flores*").  987 F.3d at 853–54.  The court in *Clarke* then "appl[ied] the payment-function test

2  from *Flores* and *Local 246*."  *Id.*  The panel in *Clarke* even remarked that "[e]very circuit to

3  consider whether a payment scheme is excludable from the FLSA's regular rate as reimbursement

4  for work-related expenses has assessed how the payments function, taking into account factors

5  similar to those we have indicated."  *Id.* at 854.

6       Moreover, in its order granting partial summary judgment, this court also discussed the

7  Ninth Circuit's decisions in *Local 246* and *Flores*, noting that district courts in this circuit have

8  found those decisions' "emphasis on how a payment *functions* to guide the determination of

9  whether those payments are exempt from the regular rate under § 207(e)(2)," and this court

10  similarly found that the emphasis on the "function of a payment to be instructive."  (Doc. No. 58

11  at 10–11.)

12       Against this backdrop, the court is not persuaded by defendant's argument that the Ninth

13  Circuit's decision in *Clarke* constitutes an intervening change in the controlling law requiring

14  reconsideration of this court's order granting partial summary judgment as to liability in this case.

15  *See Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 222 (D.

16  Ariz. 2012) (noting that the two basic principles for determining whether there has been a change

17  in controlling law are that "confirmation or clarification of existing law is not tantamount to a

18  change in controlling law," and "a change in controlling law results where a subsequent decision

19  creates a significant shift in a court's analysis") (citations omitted); *Dr. Seuss Enters., L.P. v.

20  ComicMix LLC*, 553 F. Supp. 3d 803, 810 (S.D. Cal. 2021) (denying a motion for reconsideration

21  where "the alleged statements of new controlling law cited by [defendant] are merely

22  restatements or clarifications of existing law that neither necessitate nor permit this Court's

23  revisiting of the Referral Order").  While it is true that "[t]he Ninth Circuit declined to adopt a

24  'per se rule' that 'per diem payments that vary with hours worked must *always* be included in the

25  FLSA's regular rate,'" *Hubbard v. RCM Techs. (USA), Inc.*, No. 19-cv-6363-YGR, 2021 WL

26  5016058, at *4 (N.D. Cal. Oct. 28, 2021) (quoting *Clarke*, 987 F.3d at 856), this court did not

27  apply—nor rely upon—such a "per se" rule in concluding that the per diem payments at issue in

28  this case functioned as remuneration for hours worked.  (Doc. No. 58 at 6–14.)

1    Therefore, defendant's motion for reconsideration (Doc. No. 71) will be denied.

2    **C.      Defendant's Alternative Motion for Decertification of the Class and FLSA Collective**

3    Defendant moves in the alternative for decertification of the certified class and FLSA

4    collective for three reasons, none of which are persuasive.  (Doc. No. 71 at 21–26.)

5    First, defendant argues that the common legal issue of whether per diem benefits must be

6    included in the regular rate for calculating overtime pay is no longer sufficient for certification in

7    light of *Clarke*'s requirement of an "individualized and case-specific inquiry," and "[t]he need for

8    such individualized inquiry is simply inconsistent with class or collective treatment."  (*Id.* at 21–

9    24.)  However, as plaintiff correctly points out in her opposition to defendant's motion, "*Clarke*

10   does not 'require' an 'individualized inquiry' into anything."  (Doc. No. 75 at 18.)  Indeed, the

11   terms "individualized" or "individual" do not appear at all in the *Clarke* decision.  Apparently

12   recognizing the futility of this argument, defendant does not mention it in its reply.

13   Second, defendant argues that the class and collective should not include individuals

14   whose per diem payments were never adjusted (i.e., individuals who did not miss a shift) because

15   those individuals are atypical from other members.  (Doc. No. 71 at 24–26.)  But this argument

16   misses the mark entirely because plaintiff challenges defendant's policy of excluding the per diem

17   from the traveler's regular rate in calculating overtime pay, not defendant's policy of adjusting

18   the per diem when travelers miss a shift.  (Doc. No. 75 at 19.)  In other words, regardless of

19   whether a traveler missed a shift or not, that traveler's per diem is excluded from the overtime

20   pay calculation.  *Junkersfeld v. Per Diem Staffing Sys., Inc.*, No. 4:18-cv-07795-KAW, 2019 WL

21   3842067, at *3 (N.D. Cal. Aug. 15, 2019) (noting that the alleged "harm is not the reduction or

22   proration of the per diem, . . . it is the exclusion of the per diem from the regular rate of pay,

23   which is used to calculate the overtime premium").  In addition, defendant's argument is not

24   supported by its citation to the Ninth Circuit's decision in *Castillo v. Bank of America, NA*, 980

25   F.3d 723 (9th Cir. 2020).  In *Castillo*, the court affirmed the denial of class certification of a

26   putative class that lacked predominance because many putative class members did not work

27   overtime or did not earn a bonus and were thus not subject to the challenged bonus formula.  980

28   F.3d at 730–32.  Here, in contrast, the certified class and collective are limited to individuals who

11

worked overtime, and as amended by this order, the class and collective excludes individuals who were paid a high enough overtime rate that they were not harmed by the challenged policy.  Thus, defendant's reliance on *Castillo* is unavailing.

Third, and finally, defendant argues that because it regularly pays "extra" compensation beyond the statutory minimums (such as "double time" and holiday pay), many individuals should be excluded from the class and collective because they were not injured by its policy of excluding per diems in calculating overtime pay.  (Doc. No. 71 at 26.)  Because the court already addressed defendant's arguments in this regard when analyzing plaintiff's motion for leave to amend the class and collective definitions above, the court will not repeat its analysis here. Moreover, defendant's argument has been rendered moot by the court's decision to permit plaintiff's requested amendments to the definitions of the certified class and collective.

Accordingly, decertification of the previously certified class and FLSA collective is inappropriate here.  Defendant's motion in the alternative for decertification (Doc. No. 71) is therefore denied.

## CONCLUSION

For the reasons set forth above,

1.  Plaintiff's motion for leave to amend the certified class and FLSA collective definitions (Doc. No. 73) is granted;

2.  The definition of the class that was certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on February 18, 2019 (Doc. No. 25), as amended, is as follows:  All non-exempt hourly healthcare professionals employed in California through the RN Network division of CHG Medical Staffing, Inc., who, at any time from September 29, 2013 through the date of certification, worked overtime and had the value of their meals and incidental stipends, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay, and were paid overtime at a rate that was less than one and one-half (1 ½) times what their regular rate would have been had the value of their housing and/or meal and incidental benefits been included;

12

3.   The definition of the collective that was conditionally certified pursuant to the FLSA on February 18, 2019 (Doc. No. 25), as amended, is as follows:  All non-exempt hourly healthcare professionals employed in the United States through the RN Network division of CHG Medical Staffing, Inc. who, at any time within the three years preceding certification, worked in excess of 40 hours in one or more workweeks and had the value of their meals and incidentals stipend, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay, and were paid overtime at a rate that was less than one and one-half (1 ½) times what their regular rate would have been had the value of their housing and/or meal and incidental benefits been included;

4.   Defendant CHG's motion for reconsideration, or in the alternative, for decertification (Doc. No. 71) is denied; and

5.   The Clerk of the Court is directed to reassign this case to U.S. District Judge Ana I. de Alba for all further proceedings in this action before the district court.  The parties are advised that all future filings in this case in this district court shall bear the new case number of 1:17-cv-01323-ADA-CDB.

IT IS SO ORDERED.

Dated:   __October 5, 2022__                    _____

                                                UNITED STATES DISTRICT JUDGE