1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JACQUELINE CARLINO, an individual on behalf of herself and others similarly situated,

Plaintiff,

v.

CHG MEDICAL STAFFING, INC.,

Defendant.

Case No. 1:17-cv-01323-LHR-CDB

ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

(Doc. 101)

Pending before the Court is the unopposed motion of Plaintiff Jacqueline Carlino ("Plaintiff") for preliminary approval of class and collective action settlement.  (Docs. 101, 103).[1] For the reasons explained herein, Plaintiff's motion for preliminary approval of class and collective action settlement shall be granted.

**Background**

Defendant CHG Medical Staffing, Inc. ("Defendant") is a staffing company, headquartered in Utah, that employs healthcare professionals for short-term assignments across the United States.  (Doc. 101-3 at ¶ 6).  The RN Network division of Defendant focuses on

---

[1] On December 19, 2023, the parties consented to the jurisdiction of the United States Magistrate Judge only for purposes of ruling on the pending motion for preliminary approval of class and collective action settlement.  (Doc. 105).  Accordingly, this motion has been assigned to Magistrate Judge Christopher D. Baker.  (Doc. 106).

staffing nurses on short-term travel assignments—usually lasting 13 weeks—at medical facilities throughout the United States.  *Id*. at ¶ 8.  From 2015 through 2017, Defendant staffed Plaintiff as a nurse on multiple assignments both in California and other states.  (Docs. 101-3 at ¶ 9; 101-5 at ¶ 2).

Plaintiff asserts as part of her pay on assignments, she received per diem benefits consisting of weekly meals, incidental stipends, and a weekly housing allowance or company-provided housing (collectively "Per Diem Benefits").  (Doc. 101-5 at ¶ 4).  Plaintiff claims her Per Diem Benefits were subject to being prorated or charged back if she did not work the minimum required weekly hours for each assignment.  *Id*.  Plaintiff attests "[o]n occasion, [she] worked in excess of 40 hours per week" and "Defendant did not include the value of [her] Per Diem Benefits in the calculation of [her] overtime rate of pay."  *Id*. at ¶ 5.

On September 29, 2017, Plaintiff filed a collective and class action complaint against Defendant.  (Doc. 1).  Plaintiff raises the following claims against Defendant: (1) failure to pay overtime wages, (2) unfair business practices, (3) waiting time penalties, and (4) violations of the Fair Labor Standards Act ("FLSA").  *Id*.; Cal. Labor Code §§ 203, 510, 1194; Cal. Business & Professions Code § 17200, et. seq; 29 U.S.C. § 201, et. seq.  Defendant filed an answer denying liability and asserting multiple defenses on October 25, 2017.  (Doc. 6).

On September 18, 2018, Plaintiff filed a motion to certify a California-wide class, pursuant to Federal Rule of Civil Procedure 23, in connection with the California claims and to certify a nationwide collective in connection with the FLSA claim.  (Doc. 19).  On November 13, 2018, Defendant filed an opposition to the motion and Plaintiff filed a reply on December 18, 2018.  (Docs. 21-22).  On January 8, 2019, the Honorable District Judge Dale A. Drozd presided over a hearing on Plaintiff's motion to certify class.  (Doc. 24).

On February 28, 2019, the Court issued an order granting Plaintiff's motion for rule 23 class certification and conditional certification of an FLSA collective.  (Doc. 25).  Specifically, the Court certified the following class and collective:

///

///

2

California Class

All non-exempt hourly healthcare professionals employed in California through the RN Network division of CHG Medical Staffing, Inc., who, at any time from September 29, 2013 through the date of certification [February 28, 2019], worked overtime and had the value of their meals and incidental stipends, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay.

FLSA Collective

All non-exempt hourly healthcare professionals employed in the United States through the RN Network division of CHG Medical Staffing, Inc., who, at any time within the three years preceding certification, worked in excess of 40 hours in one or more workweeks and had the value of their meals and incidentals stipend, housing allowance, and/or housing accommodation excluded from their regular rate for purposes of calculating overtime pay.

*Id*. at 17-18.  On March 19, 2019, the Court issued an order approving Rule 23 class and FLSA conditional collective certification notices.  (Docs. 27; 101-3 at ¶ 14).  Following the opt-out/opt-in process, the California Class included 686 individuals and the FLSA Collective included 295 opt-ins.  (Doc. 101-3 at ¶ 15).

On May 14, 2019, the parties filed cross motions for summary judgment.  (Docs. 31, 33).  On June 14, 2019, the parties filed oppositions to the cross motions for summary judgment and replies on July 2, 2019.  (Docs. 31, 33-37).  Thereafter, the parties filed supplemental authority in support of their cross motions for summary judgment.  (Docs. 41-44, 55-56).  On September 17, 2019, District Judge Drozd presided over a hearing of the parties' cross motions for summary judgment.  (Doc. 46).

On May 15, 2020, the Court issued an order denying Defendant's motion for summary judgment and granting in part Plaintiff's motion for summary judgment.  (Doc. 58).  The Court found Defendant liable under state and federal law for failing to include the value of per diem payments in the regular rate calculation.  *Id*. at 5-14.  The Court found in addition to overtime compensation, the FLSA Collective was entitled to liquidated damages.  *Id*. at 16-17.  However, the Court held Defendant was not liable for California waiting time penalties or an extended FLSA statute of limitations period because Defendant's underpayment of overtime did not qualify as "willful" under California and federal law.  *Id*. at 14-17.

On May 26, 2020, Defendant filed a motion to certify an interlocutory appeal.  (Doc. 59).  Defendant asserted the "'dispositive question' framed by this Court in its ruling order – 'whether the value of…per diems that vary with the number of hours worked are to be included in a [traveling nurses'] regular rate for the purpose of calculating the traveler's overtime pay' under the FLSA [] self-evidently 'involves a controlling question of law.'"  (Doc. 59-1 at 9).  Defendant requested that the Court certify for interlocutory appeal its order denying Defendant's motion for summary judgment and granting in part Plaintiff's motion for summary judgment pursuant to 28 U.S.C. § 1292(b) or, in the alternative, to stay this action pending the Ninth Circuit's opinion in *Clarke v. AMN Svcs., LLC* (No. 19-55784).  *Id*. at 21-22.  On June 5, 2020, the Court granted the parties' stipulated request for order staying all proceedings in this case until after the Ninth Circuit issued an opinion in *Clarke*.  (Docs. 61, 62).

On September 4, 2020, the parties participated in a full-day mediation with retired Los Angeles Superior Court Judge Charles McCoy.  (Doc. 101-3 at ¶ 39).  The mediation did not result in a settlement and the parties resumed litigation.  *Id*.

On February 8, 2021, the Ninth Circuit issued its decision in *Clarke v. AMN Services, LLC*, 987 F.3d 848 (9th Cir. 2021).  In light of the Ninth Circuit's ruling in *Clarke*, Defendant filed a motion on September 15, 2021, asking the Court to reconsider both its ruling on summary judgment and, in the alternative, decertifying the class and collective.  (Doc. 71).

On September 29, 2021, Plaintiff filed a motion to amend the definition of Rule 23 class and FLSA collective for the limited purpose of excluding any individuals who suffered no damages as a result of Defendant's practice of excluding the value of per diem in calculating the overtime rate.  (Doc. 73 at 4).  Specifically, some individuals received extra compensation and were therefore paid a "sufficiently high overtime rate" (above the statutorily required minimum) notwithstanding the exclusion of the per diem from their overtime rate calculation.  *Id*. at 4, 7.  Plaintiff sought to amend both the class and collective definitions to add the following language: "[A]nd were paid overtime at a rate that was less than one and one-half (1 ½) times what their regular rate would have been had the value of their housing and/or meal and incidental benefits been included."  *Id*. at 2, 8.

On October 15, 2021, Plaintiff filed an opposition to Defendant's motion for reconsideration and Defendant filed a reply on October 29, 2021.  (Docs. 75-76).  On November 1, 2021, Defendant filed an opposition to Plaintiff's motion to amend the Rule 23 class and FLSA collective definitions and Plaintiff filed a reply on November 8, 2021.  (Docs. 77-78).  Thereafter, the parties filed supplemental authority in support of their respective motions.  (Docs. 85, 88-92).

On October 6, 2022, the Court issued an order granting Plaintiff's motion to amend the Rule 23 class and FLSA collective definitions and denying Defendant's motion for reconsideration.  (Doc. 93).  The Court granted Plaintiff's motion to amend the class and collective definitions as requested, reasoning that Plaintiff had demonstrated that doing so would "winnow out" identifiable, non-injured members.  *Id*. at 7-8.  Further, the Court was not persuaded that the Ninth Circuit's decision in *Clarke* constituted an intervening change in the controlling law warranting reconsideration of the Court's order and that decertification of the previously certified Rule 23 class and FSLA collective was inappropriate.  *Id*. at 7-12.

The Court adopted Plaintiff's proposed modifications to the Rule 23 Class and FLSA Collective definitions.  *Id*. at 12-13.  This limited the California Class to 667 individuals and the FLSA Collective to 166 individuals.  (Doc. 101-3 at ¶ 29).  After accounting for the overlap between the California Class and FLSA Collective, there currently are 782 separate individuals in the class and/or collective.  *Id*. at ¶ 30.

On January 20, 2023, the parties participated in a second mediation with retired Judge McCoy.  *Id*. at ¶ 40.  After a full-day mediation, the parties reached a tentative agreement to settle the matter, subject to finalizing a comprehensive settlement agreement.  *Id*. at ¶ 41.  One month later, the parties reached a comprehensive agreement and executed the present Joint Stipulation and Settlement Agreement (hereafter "Settlement").  (Docs. 101-3 at ¶ 42; 101-4 at 17-18).

A. The Proposed Settlement

The Settlement is on behalf of the members of the California Class and FLSA Collective certified by the Court.  (Doc. 101-4 at 6).  The parties agree that the California Class includes 667 individuals and the FLSA Collective includes 166 individuals.  *Id*.  The Settlement "shall become effective on the latest of the following dates: (a) 45 days after the Court enters an order granting

final approval of the Settlement if no appeal of that final approval order is filed, or (b) if an appeal of the final approval order is filed, 35 days after termination of the appeal (including any requests for rehearing) resulting in a final judicial approval of the settlement (hereafter 'Effective Date')." *Id*. at 5.

1.  Payment Terms

a. Gross Settlement Amount

Pursuant to the Settlement, Defendant shall pay a non-reversionary gross settlement amount of Three Million Seven Hundred Thousand Dollars ($3,700,000). *Id*. at 8. The gross settlement amount includes attorneys' fees and costs to Plaintiff's counsel as determined by the Court, individual settlement payments to the California Class and FLSA Collective, any service award to Plaintiff as determined by the Court, and the Settlement Administrator's fees and costs. *Id*. "Under no circumstances shall [Defendant] be required to pay or contribute any monies in excess of the Gross Settlement Fund, except that [Defendant] is responsible for paying, with funds separate and apart from the [gross settlement amount], the employer's share of any federal, state, and/or local payroll taxes on the portion of individual settlement payments apportioned to wages." *Id*. Subject to Court approval, the Settlement provides for the following payments from the gross settlement amount:

i. Class Counsel

The parties agree, subject to Court approval, to pay attorney's fees to Plaintiff's counsel (hereinafter "Class Counsel"), in an amount to be determined by the Court and not to exceed one-third (1/3) of the gross settlement amount ($1,233,333.33), and up to $30,000.00 may be allocated to reimburse actual costs. *Id*.

ii. Class Representative (Plaintiff)

The parties agree, subject to Court approval, to pay up to $10,000 from the gross settlement amount to Plaintiff. *Id*.

iii. Settlement Administrator

The parties selected CPT Group, Inc. ("CPT") as the Settlement Administrator in this action. (Doc. 101-3 at ¶ 44). The parties estimate, subject to Court approval, up to $12,000 will

be deducted from the gross settlement amount for CPT's administration of the settlement.  (Doc. 101-4 at 8).

The parties agree, "[i]n the event, the Court reduces the amount awarded as Class Counsel Fees, Class Counsel Costs, Settlement Administration Costs, or Service Awards, the difference shall be included in the funds available for distribution to the California Class and FLSA Collective." *Id*. at 9.  No funds will revert to Defendant from the gross settlement amount.  *Id*. The payment of class counsel fees, class counsel costs, settlement administration expenses, and the service award shall be reported on an IRS Form 1099 and will not be subject to withholdings. *Id*. at 10.

b. Net Settlement Amount

After the aforementioned payments, the net settlement amount, estimated to be $2,414,666.67, shall be distributed to the California Class and FLSA Collective.  *Id*. at 9. Plaintiff asserts the average payment per individual is projected to exceed $3,000.00.  (Doc. 101-1 at 7).

92% of the net settlement amount will be distributed to the California Class ("California Class Fund") as follows:

> "The California Class Fund shall be allocated pro rata among the members of the California Class based on the number of weeks worked in California as reflected in Defendant's payroll records from September 29, 2013, through February 28, 2019 (hereafter "Qualifying California Workweeks"). The California Class Fund shall first be divided by the total number of Qualifying California Workweeks worked by the entire California Class to determine the monetary value of each Qualifying California Workweek. Each California Class member's share of the California Class Fund will then be calculated by multiplying that individual's number of Qualifying California Workweeks by the monetary value of each Qualifying California Workweek. Mathematically, a California Class member's individual settlement payment will be calculated as follows: (California Class Fund ÷ Qualifying California Workweeks of entire California Class) x (Qualifying California Workweeks worked by the individual) = individual settlement payment."

(Doc. 101-4 at 9).  In order to receive a payment from the California Class Fund, a member of the California Class need not submit a claim form but will automatically be sent a settlement payment calculated above.  *Id*.

Eight per cent of the net settlement amount will be distributed to the FLSA Collective ("FLSA Fund") as follows:

> "The FLSA Fund shall be allocated pro rata among the members of the FLSA Collective based on the number of workweeks each member worked in the United States as reflected in Defendant's payroll records from February 28, 2016, through February 28, 2019 (hereafter "Qualifying FLSA Workweeks"). The FLSA Fund shall first be divided by the total number of Qualifying FLSA Workweeks worked by the entire FLSA Collective to determine the monetary value of each Qualifying FLSA Workweek. Each FLSA Collective member's share of the FLSA Fund will then be calculated by multiplying that individual's number of Qualifying FLSA Workweeks by the monetary value of each Qualifying FLSA Workweek. Mathematically, a FLSA Collective Member's individual settlement payment will be calculated as follows: (FLSA Fund ÷ Qualifying FLSA Workweeks of entire FLSA Collective) x (Qualifying FLSA Workweeks worked by the individual) = individual settlement payment."

*Id.* at 9-10.  In order to receive a payment from the FLSA Fund, a member of the FLSA Collective need not submit a claim form but will automatically be sent a FLSA settlement payment calculated above.  *Id.*

The parties agree that 30% of settlement payments will be treated as wages and 70% will be treated as penalties and interest.  *Id.* at 10.  The portion treated as wages will be subject to regular and/or applicable payroll and income tax withholdings (for the employee portion of withholdings only) and will be reported on an IRS Form W-2.  *Id.*  The portion treated as penalties and interest will not be subject to regular and/or applicable payroll and income tax withholdings and will be reported on an IRS Form 1099.  *Id.*  As noted above, Defendant's share of employer-side payroll taxes on the individual settlement payments will be paid by Defendant with funds separate and apart from the gross settlement amount.  *Id.*

The Settlement provides CPT shall be responsible for issuing the appropriate tax forms, calculating applicable withholdings, and transmitting the required employee withholdings to the appropriate state and federal tax authorities.  *Id.* at 11.  Within five days of calculating the payroll withholdings, CPT shall notify Defendant of the amount of employer-side payroll taxes that Defendant will need to separately pay to the appropriate state and federal tax authorities.  *Id.* Additionally, the Settlement provides a Circular 230 Disclaimer for the parties.  *Id.*

/ / /

2. The Release of Claims

    a. California Class Release

The parties agree as of the Effective Date, all members of the California Class shall release Defendant and any parent, subsidiary, affiliate, predecessor, or successor thereof, including but not limited to all agents, employees, officers, directors, attorneys, and healthcare facility clients (hereafter "the Released Parties") thereof, for the period of September 19, 2013, through the date the Court enters an Order granting preliminary approval from all "Class Released Claims." *Id*. at 6.  The Class Released Claims are defined as follows:

> "[A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, or causes of action, contingent or accrued, which relate to the wage and hour and California Labor Code claims alleged in the complaint or relate to other claims that could have been alleged based on the facts asserted in the complaint, including but not limited to regular and overtime rate calculations, waiting time penalties, minimum wages, timely payment of wages, wage statements, reimbursements, unlawful deductions from wages, and derivative or related claims, including but not limited to Private Attorney General Act claims, claims for restitution and other equitable relief, liquidated damages, punitive damages, or penalties of any nature whatsoever."

*Id*. at 6-7.

    b. FLSA Collective Release

The parties agree as of the Effective Date, all members of the FLSA Collective shall release the Released Parties, for the period of February 28, 2016, through the date the Court enters an order granting preliminary approval from all "FLSA Released Claims". *Id*. at 7.  The FLSA Released Claims are defined as follows:

> "[A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, or causes of action, contingent or accrued, which relate to the FLSA unpaid overtime claim alleged in the complaint or relate to other FLSA claims that could have been alleged based on the facts asserted in the complaint."

*Id*.

    c. Plaintiff's Individual General Release

The parties agree as of the Effective Date, Plaintiff in her individual capacity, shall irrevocably and unconditionally release, acquit, and discharge the Released Parties from any and all complaints, claims, liabilities, obligations, promises, agreements, controversies, damages,

costs, losses, debts and expenses (including attorneys' fees and costs incurred), of any nature whatsoever, known or unknown, that arose before the Effective Date, including, but not limited to, her individual claims that were or could have been alleged based on the facts asserted in the complaint.  *Id*.  Further, Plaintiff expressly waives the benefits of California Civil Code § 1542. *Id*.[2]

3. Procedures for Objecting to the Settlement and Disputing Qualifying Workweeks Calculation

As noted above, the parties agree members of the California Class and FLSA Collective will not be required to take any action to receive their settlement shares.  *Id*. at 9-10.  However, any California Class and FLSA Collective member who wishes may submit objections to the settlement or dispute the number of Qualifying California Workweeks and/or Qualifying FLSA Workweeks allocated to them.  *Id*. at 13.  The proposed notice for the California Class and FLSA Collective members explains the procedures to object and/or dispute their settlement share.  *Id*. at 13, 20-25.

**<u>Legal Standard</u>**

Plaintiff seeks preliminary approval of a settlement that would resolve the state labor law and FLSA claims.  Different legal standards apply to Rule 23 and FLSA actions.  Under Rule 23, court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval.  *W. v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  At the preliminary approval stage, the court "must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms."  Fed. R. Civ. P. 23(e).  "However, the "settlement need only be potentially fair,

---

[2] A general release does not extend to claims the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party. Cal. Civ. Code § 1542.

1    as the Court will make a final determination of its adequacy at the hearing on Final Approval."

2    *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).[3]

3         Approval is required to ensure settlement is consistent with the plaintiff's fiduciary

4    obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).

5    Toward that end, "Congress and the Supreme Court amended Rule 23(e) to set forth specific

6    factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'"

7    *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).  Rule 23(e)(2) now directs the Court

8    to consider whether:

9         (A) the class representatives and class counsel have adequately represented the class;

10        (B) the proposal was negotiated at arm's length;

11        (C) the relief provided for the class is adequate, taking into account;

12             (i) the costs, risks, and delay of trial and appeal;

13             (ii) the effectiveness of any proposed method of distributing relief to the class,

14             (iii) the terms of any proposed award of attorney fees, including the timing of

15             payment;

16             (iv) any agreement required to be identified under Rule 23(e)(3); and

17        (D) the proposal treats class members equitably relative to each other.

18   Fed. R. Civ. P. 23(e)(2); *see Briseño*, 998 F.3d at 1023-24 ("Simply put, class certification does

19   not cleanse all sins, especially when it involves potential collusion over divvying up funds

20   between class counsel and the class (rather than the size of the settlement fund or relief.").  "To

21   survive appellate review, the district court must show [that] it has explored comprehensively all

22   [Rule 23(e)(2)] factors [] and must give a reasoned response to all non-frivolous objections."  *In*

23   *re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022) (quoting *McKinney-*

24   *Drobins v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021)).

25        If FLSA claims are settled, the settlement must be approved by either the Secretary of

26   Labor or a federal district court.  *Seminiano v. Xyris Enter., Inc.*, 602 Fed. Appx. 682, 683 (9th

27   ───────────────

28   [3] The hearing requirement applies to final approval, and the court will observe the
requirement at that time.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th
Cir. 2015) (explaining hearing requirement applies before final approval).

Cir. 2015) (unpublished) (citing *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013). *But see Evans v. Centurion Managed Care of Ariz. LLC*, - F.Supp.3d -, 2023 WL 5095201, at *2-3 (D. Ariz. Aug. 9, 2023) (surveying appellate and district court cases and concluding the FLSA does not require judicial approval of settlement agreements).  In the absence of Supreme Court or Ninth Circuit guidance, district courts often assess whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  *Dahl v. Bay Power*, No. 20-cv-07062-HSG, 2021 WL 2313388, at *1 (N.D. Cal. May 28, 2021).  A dispute is "bona fide" if there are "legitimate questions" about the defendant's FLSA liability.  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).  Additionally, other judges in this district often consider many of the same factors that guide preliminary certification of Rule 23 class actions.  *E.g.*, *Mondrian v. Trius Trucking, Inc.*, No. 1:19-cv-00884-ADA-SKO, 2022 WL 6226843, at *10 (E.D. Cal. Oct. 7, 2022); *Maciel v. Bar 20 Diary, LLC*, No. 1:17-cv-00902-DAD-SKO, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018).

**<u>Analysis</u>**

The Court evaluates below whether the preliminary settlement proposal satisfies Rule 23 and the FLSA's requirements.

A.  Representation of the Class

To determine the adequacy of representation under Rule 23(e)(2), the Court may consider whether the interests of the named plaintiff are "aligned with the interests of the Class Members." *Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "Class Counsel are experienced and competent" supports a conclusion that the class is adequately represented.  *Id.*; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  Thus, the adequacy analysis under Rule 23(e)(2) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Moreno v. Beacon Roofing Supply, Inc.*, No. 19cv185-GPC(LL), 2020 WL 1139672, at *5 (S.D. Cal. Mar. 9, 2020).

1   Because Plaintiff carried her burden to show the applicable prerequisites were satisfied

2   under Rule 23(a), the Court finds this requirement under Rule 23(e)(2) is also satisfied.  *See*

3   *Moreno*, 2020 WL 1139672, at *5 (S.D. Cal. Mar. 9, 2020); *Mejia v. Walgreen Co.*, No. 2:19-cv-

4   00218-WBS-AC, 2020 WL 6887749, at *9 (E.D. Cal. Nov. 24, 2020) (collecting cases).

5   Moreover, Plaintiff has expressed her continued willingness to represent and protect the interests

6   of the class.  (Doc. 101-5 at 3).  Thus, the Court concludes that Plaintiff and Counsel for Plaintiff

7   will continue to adequately represent and litigate the case.

8       B.  Negotiation of the Settlement

9       Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's

10  length." Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit "put[s] a good deal of stock in the product

11  of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action

12  settlement.  *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  However, the

13  Ninth Circuit has also observed that "settlement class actions present unique due process concerns

14  for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th

15  Cir. 2011).  Thus, the Court must determine whether the process by which the parties arrived at

16  the settlement is the product of an arm's length bargain, rather, than the product of collusion or

17  fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

18      As noted above, Plaintiff and Defendant have twice gone to mediation.  (Doc. 101-3 at ¶¶

19  38-42).  The parties first pursued mediation during a full day session with a retired judge of the

20  Los Angeles Superior Court on September 4, 2020, shortly after the Court's order disposing the

21  parties' cross-motions for summary judgment.  *Id*. at ¶ 39.  The first round of mediation was

22  unsuccessful, but the parties resumed settlement negotiations on January 20, 2023, after the Court

23  ruled on Defendant's motion for reconsideration.  *Id*. at ¶ 40.  This second round of mediation

24  culminated in the Settlement Agreement.  *Id*. at ¶¶ 41-43.  Over the past five and a half years, the

25  parties exchanged large amounts of discovery that naturally reflects their proposed Settlement is

26  informed.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended*

27  (June 19, 2000); *In re Zynga Inc. Securities Litigation*, No. 12-cv-04007-JSC, 2015 WL 6471171,

28  at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery 'support

1   the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'")

2   (quoting *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA, 2012 WL 5878390, at *6

3   (N.D. Cal. Nov. 21, 2012)).

4        In light of these mediations, years of discovery, and motion practice, the Court, at this

5   stage, finds that the Settlement was the product of arm's length negotiations and is fair.  Fed. R.

6   Civ. P. 23(e)(2)(B); *see Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th Cir. 2020) (noting

7   with approval district court's fairness conclusion based, in part, on its assessment that

8   negotiations before an experienced mediator are indicative of arm's length dealing).

9       C.  The Relief provided for the Class

10        "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an

11   abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624

12   (9th Cir. 1982) (citations omitted); *see Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1242

13   (9th Cir, 1998) (a proposed settlement may be fair, adequate, and reasonable even though greater

14   recovery might be available to the class members at trial).  When analyzing an agreement, the

15   Court should examine "the complete package taken as a whole," and the proposed settlement is

16   "not to be judged against a hypothetical or speculative measure of what might have been achieved

17   by the negotiators."  *Officers for Justice*, 688 F.2d at 628.  The Ninth Circuit has long recognized

18   the need to afford appropriate deference to the parties' private, consensual decisions.  *See Hanlon*

19   *v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*

20   *Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The amount offered in the proposed settlement

21   agreement is generally the most important consideration of any class settlement.  *See Bayat v.*

22   *Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015)

23   (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013)).

24        1. Costs, risks, delays, settlement amount, and scope of released claims

25        A primary concern in evaluating a proposed class settlement "relate[s] to the cost and risk

26   involved in pursuing a litigated outcome."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee

27   Notes.  "[T]here is a strong judicial policy that favors settlements, particularly where complex

28   class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As a result, approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  In determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963-64 (9th Cir. 2009).

Plaintiff asserts that "[g]iven the fact specific nature of the overtime claims at issue here, [Defendant] has indicated that it intends to file a post-judgment appeal should the case proceed through trial."  (Doc. 101-1 at 21).  Plaintiff further asserts there remains a significant risk that, on appeal, the Ninth Circuit could find based on "a case-specific inquiry," that the per diem payments at issue in this case function to reimburse expenses.  *Id*.; *see Clarke*, 987 F.3d at 854.  Plaintiff notes in light of Defendant's anticipated appeal, the litigation could persist for several more years.  (Doc. 101-1 at 21).

Plaintiff argues, "considering the risks and delays of further litigation, a modest compromise to ensure a prompt and certain payment to the class and collective is justified and the amount recovered is well within the range of possible approval."  *Id*.  Plaintiff asserts the $3.7 million dollar settlement amounts to approximately 96% of Plaintiff's estimation of Defendant's maximum potential liability, $3,837,335.60.  (Doc. 101-3 at ¶¶ 47-48, 51).  This recovery is significantly higher than the minimum district courts have accepted.  *Cf. Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198, 2016 WL 5907869, at *7-8 (N.D. Cal. Oct. 11, 2016) (preliminary approval of settlement worth approximately 9% of the full verdict value); *Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-cv-0699 KJN, 2022 WL 2817435, at *11-13 (E.D. Cal. July 19, 2022) (denying preliminary approval because the proposed settlement, including 8% of projected value of non-PAGA wage and hour claims, was below the range typically approved and plaintiff needed to "better explain the reasonableness" of the proposed recovery); *Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24% settlement approval was reasonable in light of the uncertainties involved in the litigation); *Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding

settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable).  *Accord In re Mego Fi.*, 213 F.3d at 458-59 (affirming a 16.67 % settlement approval for a "weak" and "risk[y]" case).

The Court finds the settlement amount is fair and reasonable in light of what the class "actually gave up by settling." *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1123 (9th Cir. 2020). The scope of the class release is limited to claims that "relate to the wage and hour and California Labor Code claims alleged in the complaint or relate to other claims that could have been alleged based on the facts asserted in the complaint."  (Doc. 101-4 at 4-5).  The Court has scrutinized portions of this release language because, as the parties likely are aware, they cannot release claims for any violation of the California Labor Code that are disconnected from the facts of the case. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (noting class action settlement agreements cannot release claims of absent class members that are unrelated to the factual allegations of the class complaint).  However, Plaintiff notes the language explicitly ties the release to "claims alleged in the complaint or…claims that could have been alleged based on the facts asserted in the complaint." (Doc. 101-1 at 16-17).  This language is sufficient to permit any future potential litigant to raise (with another court) the scope of the release, so all can determine the preclusive effect of the agreement on whatever facts present themselves.  Likewise, the Settlement properly limits the release of FLSA claims only to those individuals who opted into the FLSA Collective.  *Id*. at 17 (citing 29 U.S.C. § 216).  On balance, the risk of continued litigation balanced against the expected relief recovered, warrants preliminary approval of the Settlement Agreement

2. Proposed Distribution

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries Inc.*, No. 3:17-cv-2335-GPC-MDD, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (citing Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution Method, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."

1   Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  The proposed method for processing

2   claims "should deter or defeat unjustified claims, but the court should be alert to whether the

3   claims process is unduly demanding."  *Id.*

4          Here, Class and Collective Members are not required to take any action, such as

5   submitting a claim form, to receive their Settlement payment.  (Doc. 101-4 at 9-10).  Instead, no

6   later than 15 days after the Court enters an order granting preliminary approval of the Settlement,

7   Defendant shall provide the Settlement Administrator the means to notify members of the Class

8   and Collective.  *Id.* at 12.  Before mailing the Settlement Notice, the Settlement Administrator

9   shall review the National Change of Address Registry for all members of the Class and Collective

10  and/or conduct a skip trace to determine the most-up-to date addresses.  *Id.*

11         Within ten days after receipt of the gross settlement amount, the Settlement Administrator

12  shall distribute all payments owed under the Settlement, including (1) the California Class

13  payments and FLSA Collective payments, (2) Class Counsel Fees, (3) Class Counsel Costs, (4)

14  the Service Award, and (5) Settlement Administration Costs.  (Doc. 101-4 at 14).  Because

15  submission of a claim form is not required, the proposed method of distribution is not "unduly

16  demanding" upon Class and Collective Members and will facilitate payment for legitimate

17  claims.  *See Jackson v. Fastenal Co.*, No. 1:20-cv-00345-NONE-SAB, 2021 WL 5755583, at *11

18  (E.D. Cal. Dec. 3, 2021) (holding that "the proposed method of distributing relief is effective and

19  weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where

20  the class members did not have to file a claim).  The Settlement properly acknowledges that Class

21  and Collective Members shall be bound by all the terms of the underlying agreement, regardless

22  of whether they cash their settlement payment.  (Doc. 101-4 at 15).  Further, Class and Collective

23  Members will have an opportunity to object to the settlement or dispute the qualifying workweek

24  calculations.  *Id.* at 13.  This method of distributing relief is "simple and effective."  *See Loreto v.*

25  *Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *10 (S.D.

26  Cal. May 7, 2021).

27  / / /

28  / / /

1    3. Attorneys' fees and representative award

2    When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any

3    proposed award of attorney's fees.'" *McKinney-Drobins*, 16 F.4th at 607 (quoting Fed. R. Civ. P.

4    23(e)(2)(C)(iii)). "[T]he new Rule 23(e) makes clear that courts must balance the 'proposed

5    award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the

6    settlement is 'adequate' for class members." *Id*. (quoting *Briseño*, 998 F.3d at 1024). The court

7    "is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to

8    self-interest." *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021) (quoting *In re Bluetooth*, 654

9    F.3d at 947). Possible signs of shortchanging the class include (1) class counsel's receipt of a

10   disproportionate distribution of the settlement or a handsome fee and minimal monetary class

11   recovery, (2) a "clear sailing" provision under which defendant agrees not to object to object to

12   the attorneys' fees sought or payment of fees are made separate from class funds, and (3) an

13   agreement that fees not awarded will revert to the defendant, not to the class fund. *Kim*, 8 F.4th at

14   1180; *In re Bluetooth*, 654 F.3d at 947.

15   Here, while the proposed settlement is the product of significant negotiations, an indicium

16   of collusion is present. The agreement provides that class counsel will request attorney's fees up

17   to one-third (33.33%) of the gross settlement amount, at $1,233,333.33. (Doc. 101-4 at 8). This

18   is above the typical range of attorney's fees approved in the Ninth Circuit of between 20% to 30%

19   of the total settlement value, with 25% considered the "benchmark." *Bluetooth*, 654 F.3d at 942.

20   Because Class Counsels ask the Court to depart from the benchmark of 25 percent, the Court

21   must determine whether the requested percentage is reasonable. *Powers v. Eichen*, 229 F.3d

22   1249, 1256 (9th Cir. 2000). *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019)

23   (concluding that district court should have "explained why attorneys' fees of 31.6% ($950,000

24   out of $3 million …) or more were justified" for purposes of performing the lodestar cross-check

25   using a percentage of the total class recovery). Given that Class Counsel intends to move

26   separately for attorneys' fees and costs along with a declaration detailing billing record, and an

27   itemization of costs (Doc. 101-1 at 23), the Court need not determine at the preliminary stage

28   whether a 33% award is reasonable without the benefit of, among other things, records

1   substantiating the reasonableness of the fees sought.  *See Welch v. Metropolitan Life Ins. Co.*, 480

2   F.3d 942, 945-46 (9th Cir. 2007) (a fee applicant must provide time records documenting the

3   tasks completed and the amount of time spent on the action)

4       The Settlement proposes a service award of up to $10,000 for the sole named plaintiff in

5   this action, Ms. Carlino.  (Doc. 101-4 at 8).  This award sets Plaintiff apart from unnamed class

6   members, for whom average overall net recovery is estimated at approximately $3,000.00.  (Doc.

7   101-1 at 7).  A plaintiff who stands to receive several thousand dollars extra has an incentive to

8   support agreements that are unfair to absent class members.  *See Radcliffe v. Experian Info. Sols.*

9   *Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) ("Instead of being solely concerned about the adequacy

10  of the settlement for the absent class members, the class representatives now had a $5,000

11  incentive to support the settlement regardless of its fairness[.]").  Given that Plaintiff intends to

12  file a separate application for the service award in connection with moving for final approval, the

13  Court need not determine at the preliminary stage whether the service award is reasonable.  As

14  the amount of fees and costs to be awarded shall be determined exclusively by the Court, the

15  Court finds there is no evidence of a "clear sailing" agreement.  (Doc. 101-4 at 8-9).  Further,

16  because this is a non-reversionary settlement, this factor does not support a finding of collusion.

17  *Id.* at 8.

18      The mere presence of indicia of collusion is "not a death knell."  *Kim*, 8 F.4th at 1180.

19  Where indicia are present, the court must examine them and develop the record to support its final

20  approval decision.  *Id.* (quoting *In re Bluetooth*, 654 F.3d at 947).  Plaintiff acknowledges the

21  court's duty in this regard by notifying the Court she will be addressing the noted red flags, at

22  final approval, to offset the Court's concerns.

23      4. Agreements made in connection with the proposal

24      Plaintiffs identify no other agreements made in connection with the proposed settlement.

25  *See* Fed. R. Civ. P. 23(e)(2)(C), (e)(3); (Doc. 101-3 at ¶ 43).  Therefore, this final sub-factor of

26  "the relief provided for the class" weighs in favor of approving the settlement.

27  / / /

28  / / /

D.  Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD, 2020 WL 520616, at *7 (C.D. Cal. Jan. 31, 2020) (citation omitted).

Plaintiff asserts the settlement does not provide improper preferential treatment to her and any particular Class or Collective Members.  (Doc. 101-1 at 17).  Plaintiff notes the apportionment of 92% of the net settlement amount to the California Class and 8% to the FLSA Collective is reasonable because these amounts roughly correspond to projected exposure to the Class and Collective.  *Id*. at 17-18.  Plaintiff also notes exposure on the California state claims greatly exceeds the FLSA exposure because the Class/Collective members regularly worked California overtime hours, but seldom worked FLSA overtime hours.  *See* (Doc. 101-3 at ¶ 50). The Court finds this proposed settlement distribution scheme is equitable given the dramatic difference in the proposed damages between the two sets of claims.

Next, Plaintiff notes the Settlement Agreement prescribes a formula to distribute the net settlement amount, pro rata, based on the number of respective weeks worked within the Class and Collective period.  (Doc. 101-4 at 9-10). The Court finds, like many other California district courts, that this is a reasonable and impartial basis for allocating funds in a class wage and hour settlement.  *E.g.*, *Cooks v. TNG GP*, No. 2:16-cv-01160-KJM-AC, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing that the calculation of payments to class members "on a pro-rata basis based on the number of compensable workweeks each member worked … is fair and treats class members equitably"); *Gomez-Gasca v. Future AG Mgmt. Inc.*, No. 19-cv-2359-YGR, 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020) (noting that in the preliminary approval stage, "the Court approved the proposed plan pro-rata allocation based on the number of workweeks the class member performed work during the Class Period"); *In re Regulus Therapeutics Sec. Litig*., No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29, 2020) (finding a pro-

rata distribution plan was equitable and weighed in favor of approving the settlement terms. *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 729638, at *6 (E.D. Cal. Feb. 18, 2015) (finding "nothing to suggest that the settlement grants preferential treatment" where the net settlement amount "will be divided among the class members . . . based on the number of compensable work weeks they worked").

Additionally, Plaintiff asserts the service award requested is well within the range that has been approved by courts in wage and hour class actions.  (Doc. 101-1 at 19).  Again, the Court finds for the purpose of preliminary approval of this action, the proposed incentive award is not so out of step that it violates Fed. R. Civ. P. 23(e)(2)(D) as Plaintiff will be filing a separate application.  At this stage, the Court finds the settlement treats the Class and Collective Members equitably relative to each other.

Accordingly, for the aforementioned reasons, the Court has evaluated the terms of the Settlement Agreement and holds it is fair, reasonable, and adequate, at this stage pursuant to Rule 23.

**Notice Requirements**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The Rule directs the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, (issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the members so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and internal quotations omitted).

1       Here, the proposed notice packet complies with Rule 23(c)(2).  (Doc. 101-4 at 20-25).  It

2 contains a concise and comprehensible summary of the action, the Class and Collective

3 definitions, and the claims.  *Id*. at 20-21.  It contains a breakdown of the settlement and the

4 method by which an individual's claims will be calculated.  *Id*. at 21-23.  The notice also provides

5 information for individuals to dispute or object to the settlement.  *Id*. at 23, 25.  Additionally, the

6 notice provides details about the binding nature of the settlement and what claims the individuals

7 will be releasing.  *Id*. at 24.

8       The Court shall order Plaintiff to make the following updates before sending the notice to

9 class members, including the proper case number for this action, the date of the hearing for Final

10 Approval, the deadline to object to the settlement, and the Settlement Administrator's

11 information.

12 **FLSA Claim**

13       The Court finds that there are legitimate questions about Defendant's FLSA liability

14 because Defendant contests liability.  (Doc. 6 at ¶¶ 50-51); *see* (Doc. 71 at 26) (Defendant

15 contests the extent of the alleged damages under the FLSA arguing it is entitled to a "credit or

16 offset" for overpayments of overtime, double-time, and other premium pay beyond the statutory

17 requirement); *see also* (Doc. 101-4 at 22) (Defendant "vigorously denies all allegations of

18 wrongdoing or liability whatsoever."); *Selk*, 159 F. Supp. 3d at 1172, 1174.  Indeed, the formerly

19 assigned district judge in this action previously acknowledged the existence of a bona fide dispute

20 concerning Defendant's liability.  (Doc. 58 at 17).  Specifically, the Court held "[Defendant] had

21 a 'good faith dispute' on the issue of whether the value of the per diem was to be included in a

22 traveler's regular rate for the purpose of calculating her overtime pay."  *Id*.  Additionally, as the

23 Court finds that the Settlement meets the factors necessary under Rule 23, approval of the FLSA

24 Collective also is appropriate.

25 **Conclusion and Order**

26       Based upon the foregoing and conditioned upon the below, the Court finds the proposed

27 settlement agreement (Doc. 101-4) is fair, adequate, and reasonable.  The factors set forth under

28

Rule 23, the FLSA, and governing Ninth Circuit precedent weigh in favor of preliminary approval of the settlement agreement. Accordingly, it is HEREBY ORDERED:

1.  Plaintiff's motion for preliminary approval of class and collective action settlement (Doc. 101) is GRANTED;

2.  The Court preliminary finds that the terms of the Joint Stipulation and Settlement Agreement ("Settlement") are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.  As set forth herein, the Court finds that: (a) significant investigation, research, and litigation have been conducted, such that the parties are able to fairly evaluate their respective positions, (b) settlement at this time will avoid the substantial cost, delay, and risk presented by further litigation of the action, (c) the Agreement resulted from extensive, informed, non-collective arm's length negotiations by experienced counsel with the assistance of a reputable mediator, and (d) the Agreement is sufficient to warrant notice of the Settlement to persons in the Settlement Class and a full hearing on the final approval of the Settlement;

3.  The proposed manner of the notice of settlement set forth in the Settlement constitutes the best notice practicable under the circumstances and complies with the requirement of due process;

4.  The Court approves the form, substance, and requirements of the notice of settlement attached as Exhibit A to the Settlement (Doc. 101-4).  Plaintiff shall make the necessary changes identified herein by this Court in the Notice Packet attached to the Settlement;

5.  The parties shall carry out the notice process according to the terms of the Settlement;

6.  The Court appoints CPT Group, Inc. as the settlement administrator, preliminarily approves settlement administration costs of up to $12,000, and, in accordance with the Settlement, directs the settlement administrator to complete dissemination of the notice of settlement within 30 days of entry of this Order;

7.  A final approval (fairness) hearing is hereby set for September 18, 2024, at 1:00pm Central (11:00am Pacific) before the Honorable Lee H. Rosenthal to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and

23

costs to class counsel and a service award to the class representative;

8. Class counsel shall file the motion for an award of attorneys' fees and costs and service award twenty-one (21) days after the settlement administrator disseminates the notice of settlement;

9. Class counsel shall file the motion for final approval of the Settlement, along with any objections to the Settlement and any responses thereto, no later than thirty-five (35) days before the final approval (fairness) hearing;

10. Pending further order of this Court, all proceedings in this matter except those contemplated herein and in the Settlement are hereby stayed; and

11. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement.

IT IS SO ORDERED.

Dated:   **April 18, 2024**     _____

UNITED STATES MAGISTRATE JUDGE