**HAYES PAWLENKO LLP**
MATTHEW B. HAYES (SBN 220639)
mhayes@helpcounsel.com
KYE D. PAWLENKO (SBN 221475)
kpawlenko@helpcounsel.com
1414 Fair Oaks Ave., Unit 2B
South Pasadena, CA 91030
TEL (626) 808-4357; FAX (626) 921-4932

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE CARLINO, an individual on behalf of herself and others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CHG MEDICAL STAFFING, INC. et al.<br><br>Defendants. | CASE NO. 1:17-cv-01323-LHR-CDB<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**<br><br>Date:      September 18, 2024<br>Time:      1:00 p.m. (CST)<br>Location:  Bob Casey U.S. Courthouse<br>               515 Rusk Ave.<br>               Houston, TX 77002 |

0
**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS'
FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE. ...................... 2

    A. The Requested Fees are Reasonable Under the Percentage –
       of-the-Fund Method. .................................................................................. 2

    B. The Requested Fees are Reasonable Under the Lodestar
       Method. ....................................................................................................... 5

        1. Hours Worked ................................................................................ 6

        2. Hourly Rates ................................................................................... 7

III. THE REQUESTED COST AWARD IS REASONABLE. .................................. 10

IV. THE REQUESTED SERVICE AWARD IS REASONABLE. ........................... 10

V. THE ADMINISTRATIVE EXPENSES ARE REASONABLE. ......................... 12

VI. CONCLUSION .................................................................................................... 12

i

**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS'
FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

**TABLE OF AUTHORITIES**

**Cases**

*Alvarez v. Farmers Ins. Exchange,*
    2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ..... 2, 12

*Benitez v. Western Milling, LLC,*
    2020 WL 3412725 (E.D. Cal. June 22, 2020) ..... 9

*Blum v. Stenson,*
    465 U.S. 886 (1984) ..... 11

*Burden v. SelectQuote Ins. Servs.,*
    2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ..... 3

*Carlin v. DairyAmerica, Inc.,*
    380 F. Supp. 3d 998 (E.D. Cal. 2019) ..... 6, 10

*Carter v. McDonald's Rests.,*
    2017 WL 5634300 (C.D. Cal. Mar. 15, 2017) ..... 12

*Cicero v. DirecTV, Inc.,*
    2010 WL 2991486 (C.D. Cal. Jul. 27, 2010) ..... 3

*Clarke v. AMN Servs., LLC,*
    987 F.3d 848 (9th Cir. 2021) ..... 1, 4

*Clarke v. AMN Servs.*, LLC,
    2018 WL 3357467 (C.D. Cal. June 26, 2018) ..... 1, 4

*Craft v. Cnty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..... 3

*Deaver v. Compass Bank,*
    2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ..... 5

*Deraujo v. Regis Corp.,*
    2017 WL 3116626 (E.D. Cal. July 21, 2017) ..... 2

*Erguera v. CMG CIT Acquisition, LLC,*
    2023 WL 4108071 (E.D. Cal. June 21, 2023) ..... 8

*Frieri v. Sysco Corp.*,
    2019 WL 6467599 (S.D. Cal. Dec. 2, 2019) ..... 10

*Gonzalez v. CoreCivic of Tennessee, LLC,*
    2020 WL 5891592 (Oct. 4, 2020) ..... 8-9

**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

*Gonzalez v. NCI Group, Inc.*,
   2023 WL 373252 (E.D. Cal. Jan. 24, 2023) ............................................................. 9

*Hopkins v. Stryker Sales Corp.*,
   2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................................. 2

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................. 2, 5, 6

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
   109 F.3d 602 (9th Cir. 1997) ............................................................. 2

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ............................................................. 8

*Kang v. Credit Bureau Connection, Inc.*,
   2023 WL 6811994 (E.D. Cal. Oct. 16, 2023) ............................................................. 8

*Kimbo v. MXD Group, Inc.*,
   2021 WL 492493 (E.D. Cal. Feb. 10, 2021) ............................................................. 9

*Lindell v. Synthes United States*,
   2016 WL 7368274 (E.D. Cal. Dec. 20, 2016) ............................................................. 12

*Lusby v. GameStop Inc.*,
   2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ............................................................. 3

*Lusk v. Five Guys Enterps. LLC*,
   2023 WL 4134656 (E.D. Cal. June 22, 2023) ............................................................. 8

*Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc.*,
   2023 WL 3569906 (E.D. Cal. May 19, 2023) ............................................................. 8

*Miller v. CEVA Logistics USA, Inc.*,
   2015 WL 4730176 (E.D. Cal. Aug. 10, 2015) ............................................................. 3, 5

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) ............................................................. 2

*Nelson v. Avon Prods.*,
   2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ............................................................. 3, 9

*Pointer v. Bank of Amer., N.A.*,
   2016 WL 7404759 (E.D. Cal. Dec. 21, 2016) ............................................................. 12

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ............................................................. 3

*Schiller v. David's Bridal, Inc.*,
    2012 WL 2117001 (E.D. Cal. June 11, 2012) ........................................... 5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................ 10, 11

*Syed v. M-I, L.L.C.*,
    2017 WL 3190341 (E.D. Cal. Jul. 27, 2017) ............................................. 9

*Turk v. Gale/Triangle, Inc.*,
    2017 WL 4181088 (E.D. Cal. Sept. 20, 2017) ........................................... 2

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 3

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. Mar. 8, 2010) ................................................. 3

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................... 2, 3, 8

*Wallace v. Countrywide Home Loans, Inc.*,
    2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) ......................................... 5

*Wert v. U.S. Bancorp*,
    2017 WL 5167397 (S.D. Cal. Nov. 7, 2017) ............................................. 9

**<u>Statutes</u>**

Fed. R. Civ. P. 23 ................................................................................... 10

**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

I.      INTRODUCTION

On April 18, 2024, following more than six years of heavily contested litigation, this Court granted preliminary approval of a $3.7 million non-reversionary settlement of an unpaid overtime claim on behalf of a class and collective consisting of 782 traveling healthcare clinicians employed by CHG Medical Staffing, Inc. ("CHG").  The settlement makes available more than $3,000 per individual.  Each member of the class and collective will automatically receive a payment without the need for submitting a claim form.

The settlement secures a significant recovery – approximately 96% of the maximum projected recovery for unpaid overtime, interest, and liquidated damages – in the face of substantial risk.  At the time this lawsuit was filed, the theory of recovery in this case – that weekly per diem payments tied to hours worked must be included in the "regular rate" used to calculate overtime pay – was a novel legal issue in California that had yet to be addressed by the Ninth Circuit or the California Court of Appeal.

After securing class and collective certification, Plaintiff ultimately prevailed on a cross-motion for partial summary judgment as to liability on the overtime claims.  This favorable ruling was secured notwithstanding a prior ruling by a district court granting summary judgment for the employer on the exact same theory of recovery.  *See Clarke v. AMN Servs.*, LLC, 2018 WL 3357467, *2-3 (C.D. Cal. June 26, 2018) (Fischer, J.) (holding that "per diem system" that "varies with the number of hours worked per day or week" need not be included in the "regular rate"). The Ninth Circuit subsequently reversed that adverse prior ruling, but uncertainty still remains in this case, as the Ninth Circuit did not adopt a "per se rule" that "per diem payments that vary with hours worked must *always* be included in the FLSA's regular rate."  *See Clarke v. AMN Servs., LLC,* 987 F.3d 848, 856 (9th Cir. 2021).

Considering the novel legal issue and ongoing risks of no recovery, the settlement is an excellent result that secures certain and substantial monetary benefits for the class and collective. By this motion, Plaintiff now seeks attorneys' fees of $1,233,333.33 (1/3 of the gross settlement), litigation costs of $20,139.25, a service award of $10,000, and settlement administration fees and costs of $12,000. As detailed below, each of these requests is supported by the law and evidence.

1

MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS'
FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES

## II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Where, as here, "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the fee award. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Overall, the goal is to produce a reasonable result." *Deraujo v. Regis Corp.,* 2017 WL 3116626, *12 (E.D. Cal. July 21, 2017); *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,* 109 F.3d 602, 607 (9th Cir. 1997) ("Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion.").

Class counsel submits that the requested fee award of $1,233,333.33, which amounts to one-third (1/3) the settlement value, is reasonable under either approach to calculating fees.

### A. The Requested Fees are Reasonable Under the Percentage-of-the-Fund Method.

"The typical range of acceptable attorney's fees under [the percentage-of-the-fund] approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the total settlement value, with 25 percent considered a benchmark percentage." *Turk v. Gale/Triangle, Inc.,* 2017 WL 4181088, *3 (E.D. Cal. Sept. 20, 2017). "[T]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002). "It is well established that the benchmark percentage should be adjusted (or replaced by a lodestar calculation) when circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Alvarez v. Farmers Ins. Exchange,* 2017 WL 2214585, *2 (N.D. Cal. Jan. 18, 2017). "Indeed, in most common fund cases, the award exceeds th[e] benchmark." *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 456 (E.D. Cal. 2013) (England, J.) (internal quotation marks omitted); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (Koh, J.) (same).

In overtime class actions like this one, courts in this circuit often award fee awards

amounting to one-third (1/3) of the settlement value.  *See, e.g., Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 492 (E.D. Cal. Mar. 8, 2010) (finding fee award of "approximately 33.3% of the total recovery obtained" in overtime and minimum wage class action to be "fair and reasonable"); *Nelson v. Avon Prods.,* 2017 WL 733145, at *6-7 (N.D. Cal. Feb. 24, 2017) (awarding fees of "one-third of the Settlement Fund" in overtime class settlement); *Lusby v. GameStop Inc.,* 2015 WL 1501095, at *3-4 (N.D. Cal. Mar. 31, 2015) (awarding fees of "one third of the Gross Settlement Fund" in wage and hour class settlement); *Burden v. SelectQuote Ins. Servs.,* 2013 WL 3988771, *4-5 (N.D. Cal. Aug. 2, 2013) (awarding fees of "one-third of the gross settlement fund" in wage and hour class settlement); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841, *1-4 (E.D. Cal. Nov. 14, 2007) (approving fee award of 33% of common fund in wage and hour class action).

This is particular true where, as here, the settlement results "in the recovery of a common fund under $10 million." *Miller v. CEVA Logistics USA, Inc.,* 2015 WL 4730176, *8 (E.D. Cal. Aug. 10, 2015).  In such settlements, district courts "*usually* award attorneys' fees in the range of 30-40% in wage and hour class actions." *Id.* (emphasis added); *see also Cicero v. DirecTV, Inc.,* 2010 WL 2991486, *6 (C.D. Cal. Jul. 27, 2010) (same); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in fees above 25%"); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (percentages greater than 30% tend to be awarded in cases with class funds of less than $10 million).

To determine whether a departure from the 25% benchmark is warranted, courts consider various factors, including (1) the results achieved, (2) the risk involved in the litigation, (3) the skill required and quality of work by counsel, (4) the contingent nature of the fee, and (5) awards made in similar cases.  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-1050 (9th Cir. 2002). Each of these factors supports Plaintiff's requests for an award of one-third of the recovery.

*First*, the Settlement achieved a substantial benefit for the class.  The Settlement secures approximately 96% of the maximum projected unpaid overtime, interest, and liquidated damages, that could be recovered through trial.  *See* Dkt. 101-3 (Hayes Decl. ¶¶ 47-51).  Members of the class and collective will receive an average payout of approximately $3,087, with the highest

3

individual payout exceeding $33,000.  *See* Exh. 3 (Settlement Administrator Decl. ¶ 9).

*Second,* the recovery of $3.7 million for the class and collective was secured despite significant risks.  As noted above, at the time this lawsuit was filed, the theory of recovery in this case – that weekly per diem payments tied to hours worked must be included in the "regular rate" used to calculate overtime pay – was a novel legal issue in California that had yet to be addressed by the Ninth Circuit or the California Court of Appeal.  *See* Exh. 1 (Hayes Decl. ¶ 15).  Moreover, at the time Plaintiff secured partial summary judgment for the class and collective as to liability on the overtime claim, a California district court had previously rejected Plaintiff's theory of recovery and granted summary judgment for the employer.  *See Clarke v. AMN Servs.*, LLC, 2018 WL 3357467, *2-3 (C.D. Cal. June 26, 2018) (Fischer, J.) (holding that "per diem system" that "varies with the number of hours worked per day or week" need not be included in the "regular rate").

Although the Ninth Circuit subsequently reversed the adverse prior ruling in the *Clarke* case,* uncertainty still remains, as the Ninth Circuit did not adopt a "per se rule" that "per diem payments that vary with hours worked must *always* be included in the FLSA's regular rate."  *See Clarke v. AMN Servs., LLC,* 987 F.3d 848, 856 (9th Cir. 2021).  Instead, the Ninth Circuit applied a "case specific inquiry" that took "into account a number of factors, not solely [the payment's] connection to hours worked" to reach a decision in *Clarke*.  *Id.* at 856 (emphasis in original).  Given the "case specific" nature of the overtime claims at issue here, CHG advised that it intended to file a post-judgment appeal should the case proceed through trial.  *See* Exh. 1 (Hayes Decl. ¶ 17).  There remains a significant risk that, on appeal, the Ninth Circuit could find, based on "a case-specific inquiry," that the per diem payments at issue in this case function to reimburse expenses.

*Third,* given that this action was heavily litigated for over six years, class counsel respectfully submits that a significant level of skill and extensive work were required to obtain the necessary discovery, litigate multiple class and collective certification issues, prevail on cross-motions for summary judgment, defeat a motion for reconsideration of the summary judgment and class certification rulings, and negotiate a favorable settlement.  As detailed in the lodestar analysis below, class counsel was required to expend over 2,000 hours of work litigating this

4
**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS'
FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

action, and the *unadorned* lodestar exceeds the 25% benchmark.  *See* Exh. 1 (Hayes Decl. ¶¶ 8-10); Exh. 4 (Billing Records & Summary Report).

*Fourth,* class counsel has litigated this lawsuit on a purely contingency basis since 2017. *See* Exh. 1 (Hayes Decl. ¶¶ 2, 19).   "No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success." *See Schiller v. David's Bridal, Inc.,* 2012 WL 2117001, *18 (E.D. Cal. June 11, 2012) (quoting *In re Sumitomo Cooper Litig.,* 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999)).  Rather, "Courts have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might by paid nothing for their work." *Wallace v. Countrywide Home Loans, Inc.,* 2015 WL 13284517, *9 (C.D. Cal. Apr. 17, 2015); *see also, e.g., Deaver v. Compass Bank,* 2015 WL 8526982, *11 (N.D. Cal. Dec. 11, 2015) ("With respect to the contingent nature of litigation – the fourth factor – courts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees. [citation]  This is especially true where, as here, class counsel has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded the 33 percent benchmark percentage sought here.") (citation omitted and emphasis added).

*Finally,* a fee award of one-third of the recovery is in line with fee awards in similar actions.  As noted above, "California district courts usually award attorneys' fees in the range of 30 to 40% in wage and hour class actions that result in the recovery of a common fund under $10 million." *Miller v. CEVA Logistics USA, Inc.,* 2015 WL 4730176, *8 (E.D. Cal. Aug. 10, 2015).

### B.     The Requested Fees are Reasonable Under the Lodestar Method.

The lodestar is calculated by multiplying the number of hours "reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011).  The court may then adjust the resulting figure "upward or downward by an

appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942. "Where, as here, the lodestar is being used as a cross-check, courts may do a rough calculation with a less exhaustive cataloging and review of counsel's hours." *Carlin v. DairyAmerica, Inc.,* 380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019) *appeal dismissed sub nom. Carlin v. Spooner*, 808 F. App'x 571 (9th Cir. 2020).

### 1. Hours Worked

As detailed in the accompanying billing records and attorney declaration, class counsel has, to date, expended a total of 2,100 hours litigating the class and collective claims over the past six and one-half years, consisting of 1,218.50 hours by Mr. Hayes and 881.50 hours by Mr. Pawlenko. *See* Exh. 1 (Hayes Decl. ¶¶ 8-10); Exh. 4 (Billing Records & Summary Report). This figure excludes time spent preparing the present motion. *See* Exh. 1 (Hayes Decl. ¶ 9). This figure also does not include the additional time that will be incurred in responding to class and collective member inquiries over the next two months, moving for final approval, and attending the final approval hearing, which will likely entail at least 25 additional hours. *See* Exh. 1 (Hayes Decl. ¶ 9).

The hours worked on behalf of the class and collective over the past six-and-a-half years, as described in more detail in the time records, can be roughly categorized as follows:

- *Investigation & Discovery* (approximately 578 hours). This consists of conferring with the class representative, interviewing more than 30 class and collective members regarding CHG's per diem and overtime policies and reviewing contracts and pay records submitted from class members at multiple assignment locations, preparing and responding to multiple sets of merits and damages discovery, taking and defending depositions, reviewing thousands of pages of pertinent policies and procedures and classwide pay records, meeting and conferring with defense counsel about numerous discovery disputes, and preparing damage models.

- *Class and Collective Certification* (approximately 498 hours). This consists of conducting legal research on class and collective certification issues, analyzing and

assembling evidence in support of certification, briefing a motion to certify a nationwide FLSA collective and Rule 23 California class, meeting and conferring with defense counsel re composition of class and collective lists, preparing notices of certification, briefing notice issues to the Court, directing the third party administrator regarding class and collective notice, fielding numerous inquiries from class and collective members regarding the certification process and their rights vis-à-vis CHG, briefing a motion to decertify the class and collective, and briefing a motion to modify the class and collective.

- *Summary Judgment* (approximately 549 hours).  This consists of legal research, analysis and assembly of evidence, and extensive briefing in connection with moving for summary judgment in favor of Plaintiff as to liability on all claims, opposing CHG's motion for summary judgment on all claims, and opposing CHG's subsequent motion for reconsideration of the Court's summary judgment ruling in favor of Plaintiff.

- *Pleadings, Stipulations, and Case Management* (approximately 179 hours).  This consists of meeting and conferring with defense counsel regarding numerous case management matters and preparing corresponding stipulations, and researching and drafting pleadings.

- *Settlement* (approximately 296 hours).  This consists of preparing mediation briefs and damage calculations, preparing for and participating in two separate mediations, negotiating settlement terms, meeting and conferring with defense counsel about settlement terms, preparing the class and collective notice, conferring with the settlement administrator, moving for approval of the settlement, and fielding calls from class and collective members.

*See* Exh. 1 (Hayes Decl. at ¶ 10); Exh. 4 (Billing Records & Summary Report).

### 2. Hourly Rates

Lodestar attorney' fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984).  Based on "a comprehensive survey of fees awarded in the Eastern District," Courts in this district have recently found that

7

**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS'
FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

"current hourly rates range from $200 to $750." *Erguera v. CMG CIT Acquisition, LLC*, 2023 WL 4108071, at *20-21 (E.D. Cal. June 21, 2023) (Thurston, J.); *see also Kang v. Credit Bureau Connection, Inc.*, 2023 WL 6811994, at *12 (E.D. Cal. Oct. 16, 2023) (noting same). "[F]or the attorneys who have been practicing law approximately 20 years or more," these Courts have repeatedly applied "the rate of $525 per hour." *Lusk v. Five Guys Enterps. LLC,* 2023 WL 4134656, at *29 (E.D. Cal. June 22, 2023); *see also Kang*, 2023 WL 6811994, at *13 (applying "rate of $525 per hour to "attorneys practicing law for 20 years or more"); *Erguera,* 2023 WL 4108071, at *2 (same); *Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc.,* 2023 WL 3569906, at *34 (E.D. Cal. May 19, 2023) (same).

As detailed in the accompanying attorney declaration, Mr. Hayes and Mr. Pawlenko have each been practicing more than 20 years, attended established law schools, completed post-graduate judicial clerkships, have a long history of litigating wage and hour class actions, and, before starting their current firm, spent years practicing employment law at international corporate law firms and government agencies. *See* Exh. 1 (Hayes Decl. ¶¶ 3-7). Based on this experience, a Court in this district has previously found "the hourly rate of $525 is appropriate" for both Mr. Hayes and Mr. Pawlenko "for purposes of performing the lodestar crosscheck" in a class action settlement. *See Erguera,* 2023 WL 4108071, at *20-21.

Applying $525 per hour to their time on this case, results in the following lodestar:

| Attorney | Hourly Rate | Hours | Amount |
|---|---|---|---|
| Matthew B. Hayes | $525 | 1,218.50 | $639,712.50 |
| Kye D. Pawlenko | $525 | 881.50 | $462,787.50 |
| **Total:** | | **2,100** | **$1,102,500** |

This lodestar is nearly equivalent to the requested fee award of $1,233,333.33 requiring a multiplier of less than 1.12 to make the figures equal. This is a modest multiplier in the class action context. *See In re Hyundai & Kia Fuel Economy Litig.,* 926 F.3d 539, 571 (9th Cir. 2019) (finding multipliers of 1.22 and 1.55 to be "modest" and "in line with others we have affirmed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (noting that "[m]ultipliers ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *see also, e.g., Gonzalez v. CoreCivic of Tennessee, LLC,* 2020 WL 5891592, at *11

**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS'
FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

(Oct. 4, 2020) (Drozd, J.) (finding "a multiplier of approximately 1.19" to "be a modest and appropriate multiplier"); *Benitez v. Western Milling, LLC,* 2020 WL 3412725, at *11 (E.D. Cal. June 22, 2020) (Oberto, M.J.) (characterizing "multiplier of two" as "relatively modest"); *Syed v. M-I, L.L.C.,* 2017 WL 3190341, at *7 (E.D. Cal. Jul. 27, 2017) (Drozd J.) (finding "multiplier" of "approximately 2.15" to be "on the lower end of multipliers which are typically approved in class action settlements").

Considering that this lawsuit presented a novel legal issue, resulted in a substantial benefit for the class and collective, faced significant merits and procedural risks that could have resulted in little or no class recovery, and was litigated on a purely contingency basis for over six-and-a-half years, class counsel submits that a modest risk multiplier of approximately 1.12 would be reasonable in this case. *See, e.g. Viscaino v. Microsoft Corp.*, 290 F.3d at 1051 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.") (internal quotation omitted); *Gonzalez v. NCI Group, Inc.,* 2023 WL 373252, at *8 (E.D. Cal. Jan. 24, 2023) (Ishii, J.) (finding "risk multiplier" of "approximately 1.43" for a case "taken on a contingency basis" to be "reasonable – and even modest – in comparison to cases in this Circuit allowing lodestar multipliers in the 2 – to - 4 range to compensate counsel for the risk of contingent class action litigation"); *Kimbo v. MXD Group, Inc.,* 2021 WL 492493, at *8 (E.D. Cal. Feb. 10, 2021) (Shubb, J.) (approving "lodestar multipier of approximately 3.7" in wage and hour class settlement); *Wert v. U.S. Bancorp,* 2017 WL 5167397, at *7 (S.D. Cal. Nov. 7, 2017) (finding "multiplier of 2.62" warranted in wage and hour class action "because of the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment and benefit achieved for the class"); *Nelson v. Avon Prods.,* 2017 WL 733145, at *6-7 (N.D. Cal. Feb. 24, 2017) (awarding, in wage and hour class settlement, fees amounting to "one-third of the settlement" and finding that "modest multiplier" of "1.3" to the lodestar was "reasonable in light of the contingent nature of the fee award and the risk of litigation").

Accordingly, class counsel respectfully requests a fee award of $1,233,333.33.

/ / /

/ / /

## III. THE REQUESTED COST AWARD IS REASONABLE.

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund." *Carlin v. DairyAmerica, Inc.,* 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019)*; see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable . . . costs that are authorized by law or by the parties' agreement"). "The award should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *Carlin*, 380 F. Supp. 3d at 1023 (citation omitted). "These costs can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.* at 1023-24 (citation omitted).

As set forth in the cost report filed concurrently herewith, class counsel has incurred $20,139.25 in properly reimbursable litigation costs, consisting of filing fees, service of process fees, deposition reporter fees, third party class notice administrator fees, copying costs, parking fees, travel expenses, and mediation fees. *See* Exh. 1 (Hayes Decl. ¶¶ 21-22); Exh. 5 (Cost Report).

## IV. THE REQUESTED SERVICE AWARD IS REASONABLE.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003) (internal citation omitted). The named Plaintiff Jacqueline Carlino seeks a service award of $10,000, which is to be deducted from the settlement fund for his services as representative of the certified class and collective. *See* Dkt. 101-4 (Settlement ¶ 6).

In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 958 (9th Cir. 2009). Such awards "are intended to compensate class representatives for work done on behalf of the class" and "to make up for financial or reputational risk undertaken in bringing the action." *Id.* at 958-59. Furthermore, where, as here, there is a "general release by a class representative," that broader release "is often coupled with an incentive payment in class action settlements." *See Frieri v. Sysco Corp.*, 2019 WL 6467599, *8 (S.D. Cal. Dec. 2, 2019).

To determine the reasonableness of a requested service award, courts consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton,* 327 F.3d at 977 (internal citation omitted).  Here, the requested award is justified by the time and risks undertaken by the named Plaintiff and the benefit he secured for the class.

Ms. Carlino has submitted a declaration describing her contributions to this lawsuit and detailing the time, risks, and burdens borne by her throughout this case.  *See* Exh. 2 (Plaintiff's Decl.).  As detailed therein, over the past 6 and-a-half years, Ms. Carlino dedicated approximately 100 hours of her time to assisting with this case.  *See* Exh. 2 (Plaintiff's Decl. ¶¶ 11-19).  Ms. Carlino responded to substantial written discovery, including document requests, interrogatories, and requests for admissions.  *See* Exh. 2 (Plaintiff's Decl. ¶ 13).  She took several days off work to travel from Wyoming to Los Angeles to submit to a deposition.  *See* Exh. 2 (Plaintiff's Decl. ¶ 14).  Ms. Carlino searched for and produced pertinent documents, reviewed CHG's discovery responses, prepared a declaration in support of class certification, and kept herself apprised of all developments in the case.  *See* Exh. 2 (Plaintiff's Decl. ¶¶ 11, 15-18).  She took off work on both September 4, 2020 and January 20, 2023 to be available for both mediations and provided her input throughout the settlement discussions.  *See* Exh. 2 (Plaintiff's Decl. ¶¶ 17-18).

Ms. Carlino also assumed significant risks by pursuing claims based on a novel legal issue that challenged the business model of how CHG, and most other travel nursing agencies, pay their workforce.  *See* Exh. 2 (Plaintiff's Decl. ¶¶ 8-9).   If unsuccessful, Plaintiffs could be liable for CHG's costs.  Moreover, being the named plaintiff in action challenging the travel nursing industry's pay practices jeopardized her employability.  *See* Exh. 2 (Plaintiff's Decl. ¶ 9).  Furthermore, as a condition of the settlement, Ms. Carlino entered into a global release, which is much broader than the narrow release applicable to other members of the class.  *See* Dkt. 101-4 (Settlement ¶ 4 subd. c).   All of the work and risks borne by Ms. Carlino has resulted in a substantial benefit to the class and collective.  As noted above, the Settlement provides an average individual payout of more than $3,000 per individual with the highest payout exceeding $ 33,000.

11
**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS'
FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**

*See* Exh. 3 (Settlement Administrator Decl. ¶ 9).

Finally, the requested service award for Plaintiff – which constitutes less than 0.3% of the gross recovery – is comparable to service awards in other wage and hour class actions. *See, e.g., Lindell v. Synthes United States*, 2016 WL 7368274, *3 (E.D. Cal. Dec. 20, 2016) (finding "service award of $10,000" to be reasonable in wage and hour settlement); *Pointer v. Bank of Amer., N.A.,* 2016 WL 7404759, *20 (E.D. Cal. Dec. 21, 2016) (granting service award of $10,000 because, among other things, "the requests is less than one percent of the total recovery"); *see also Carter v. McDonald's Rests.,* 2017 WL 5634300, *4 (C.D. Cal. Mar. 15, 2017) (approving $10,000 service award in employment class action settlement totaling $950,000); *Alvarez v. Farmers Ins. Exch.,* 22017 WL 2214585, *1 (N.D. Cal. Jan. 17, 2017) (awarding service awards of $10,000 each in wage and hour class settlement).

## V.   THE ADMINISTRATION EXPENSES ARE REASONABLE.

Finally, Plaintiff seeks approval of $12,000 in administration costs to CPT Group, Inc. ("CPT") for administering the settlement. The services provided by CPT with respect to this settlement are summarized in the company's declaration filed contemporaneously herewith. *See* Exh. 3 (Settlement Administrator Decl. ¶¶ 3-10).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an award of $1,233,333.33 in attorneys' fees, $20,139.25 in litigation costs, a service award of $10,000, and $12,000 in settlement administration expenses, which are all to be deducted from the gross settlement fund.

DATED:  June 7, 2024                            **HAYES PAWLENKO LLP**

By:<u>/s/Matthew B. Hayes</u>
Matthew B. Hayes
Kye D. Pawlenko
Attorneys for Plaintiff

**MEMORANDUM OF POINTS & AUTHORITIES RE MOTION FOR ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES**